## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISAAC HARRIS,<br>    1144 44th Street SE<br>    Washington, DC 20019,<br><br>DARNELL FRYE,<br>    4243 Blaine Street NE, Apt. 102<br>    Washington, DC 20019,<br><br>and<br><br>LEO FRANKLIN,<br>    3316 Pope Street SE<br>    Washington, DC 20020,<br><br>Individually and on behalf of all others<br>similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>MEDICAL TRANSPORTATION<br>MANAGEMENT, INC.,<br>    16 Hawk Ridge Drive<br>    Lake St. Louis, MO 63367-1829,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.    17-1371<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

1.     Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this action against Defendant Medical Transportation Management, Inc. (MTM) for failing to pay its non-emergency medical transportation (NEMT) drivers their legally mandated wages as required under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*; the District of Columbia's Minimum Wage Act (MWA), D.C. Code § 32-1001, *et seq.*; Living Wage Act (LWA), D.C.

Code § 2-220.01, *et seq.*; Wage Payment and Collection Law (WPCL), D.C. Code § 32-1302; and under contracts between the District of Columbia and MTM.

2.      This case arises out of MTM's systemic, company-wide failure to pay Plaintiffs and hundreds of similarly situated drivers the minimum wages, living wages, and overtime wages to which they are or were entitled for work performed as NEMT drivers under MTM's contracts with the District of Columbia. The drivers work or worked continuous workdays, starting between approximately 5:00 a.m. and 7:00 a.m. and lasting until approximately 5:00 p.m. to 8:00 p.m. All of the time worked by the drivers during this continuous workday is compensable, but MTM has failed to compensate or ensure the proper compensation of the drivers for their total time worked.

3.      As an employer of the drivers, as the general contractor of the subcontractors that employ the drivers, and/or by virtue of MTM's contracts with the District of Columbia, MTM is jointly and severally liable for the drivers' unpaid wages.

### JURISDICTION AND VENUE

4.      The Court has federal-question jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5.      This Court also has supplemental jurisdiction over Plaintiffs' claims under D.C. law pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the United States District Court for the District of Columbia because Plaintiffs reside in this District, MTM conducts business in this District, and the majority of the events or omissions giving rise to the claims occurred in this District. *See* 28 U.S.C. § 1391.

## PARTIES

7.     Plaintiff Isaac Harris is an adult resident of the District of Columbia. Mr. Harris has filed a consent to join this action. *See* Exh. A.

8.     Mr. Harris is an employee of MTM, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g); the MWA, D.C. Code § 32-1002(1)-(2); the LWA, D.C. Code § 2-220.02(1); and the WPCL, D.C. Code § 32-1301(2). Mr. Harris has worked and currently works for MTM as an NEMT driver in the District of Columbia, pursuant to MTM's contract with the District of Columbia.

9.     Plaintiff Darnell Frye is an adult resident of the District of Columbia. Mr. Frye has filed a consent to join this action. *See* Exh. B.

10.     Mr. Frye was an employee of MTM, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g); the MWA, D.C. Code § 32-1002(1)-(2); the LWA, D.C. Code § 2-220.02(1); and the WPCL, D.C. Code § 32-1301(2). Mr. Frye worked for MTM as an NEMT driver in the District of Columbia, pursuant to MTM's contracts with the District of Columbia.

11.     Plaintiff Leo Franklin is an adult resident of the District of Columbia. Mr. Franklin has filed a consent to join this action. *See* Exh. C.

12.     Mr. Franklin was an employee of MTM, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g); the MWA, D.C. Code § 32-1002(1)-(2); the LWA, D.C. Code § 2-220.02(1); and the WPCL, D.C. Code § 32-1301(2). Mr. Franklin worked for MTM as an NEMT driver in the District of Columbia, pursuant to MTM's contracts with the District of Columbia.

13.     Defendant Medical Transportation Management, Inc. (MTM) is a corporation incorporated in the state of Missouri, with its headquarters at 16 Hawk Ridge Drive, Lake St.

Louis, Missouri 63367-1829. Its Washington, D.C. office is located at 300 M Street SE, Suite 825, Washington, DC 20003.

14.    MTM's gross annual sales made or business done has been $500,000 or greater per year at all relevant times.

15.    MTM contracts with the District of Columbia government to provide NEMT services to drive Medicaid patients to and from their medical appointments.

16.    MTM is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d); the MWA, D.C. Code § 32-1002(3); the LWA, D.C. Code § 2-220.02(1); and the WPCL, D.C. Code § 32-1301(1B). It operates in 28 states and the District of Columbia.

17.    MTM is a general contractor within the meaning of D.C. Code §§ 32-1012(c) & 32-1303(5).

18.    MTM subcontracts work under its contract with the District of Columbia to numerous local transportation companies.

19.    MTM employs or employed Plaintiffs and others similarly situated as NEMT drivers in the District of Columbia.

20.    In addition or in the alternative, MTM and the subcontractors jointly employ or employed each driver who performed NEMT services for MTM and the subcontractor. *See, e.g.*, 29 C.F.R. § 791.2(a).

**FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS**

A.    **MTM's Contracts with the District and Its Subcontractors**

21.    NEMT involves the transportation of individuals receiving Medicaid who cannot otherwise secure transportation to and from their various health care appointments.

22.     MTM has been providing NEMT services to the District of Columbia continuously since approximately 2007 pursuant to contracts with the District. Since that time, the District of Columbia and MTM have renewed the contract for these services several times.

23.     In March 2014, MTM entered into a contract with the District of Columbia to provide NEMT services from March 2014 through December 2014 for nearly $18 million. This contract was subsequently extended three times: (1) in December 2014 to provide NEMT services from December 2014 through March 2015 for over $6 million; (2) in March 2015 to provide NEMT services from March 2015 through June 2015 for over $6 million; and (3) in June 2015 to provide NEMT services from June 2015 through December 2015 for over $13 million.

24.     In December 2015, MTM and the District of Columbia entered into the contract currently in place (collectively with the prior contracts, the D.C. Contracts). The current contract is for over $85 million and covers the period from December 2015 through December 2018, with options for December 2018 through December 2019 for over $29 million and for December 2019 through December 2020 for over $30 million.

**B.      MTM is Responsible for the Wages Paid to Drivers as their Employer, Joint Employer, and/or as the General Contractor on the D.C. Contracts**

25.     Pursuant to its contracts with the District of Columbia, MTM is responsible for hiring and firing NEMT drivers, training NEMT drivers, paying NEMT drivers and/or ensuring that NEMT drivers are paid in accordance with D.C. and federal law, retaining records on NEMT drivers, and establishing the terms and conditions of NEMT drivers' employment and day-to-day responsibilities, among other tasks.

26.     To perform these services, MTM engages a number of subcontractors to assist in the delivery of the NEMT driving services.

27.     MTM retains these subcontractors pursuant to subcontracts in which MTM retains control over the subcontractors' daily operations for the provision of NEMT services pursuant to the D.C. Contracts, including hiring and firing, the terms and conditions of employment and employees' daily responsibilities, payment of wages, and record retention relating to the employees. Upon information and belief, in all respects relevant to this action, the terms of the subcontracts are substantially the same for all of the subcontractors working for MTM under the D.C. Contracts.

28.     Under the subcontracts, the subcontractors agree to abide by MTM's transportation standards, client protocols and procedures (including notifying MTM immediately of any significant delays to a client's schedule and ensuring that clients do not arrive at appointments more than 30 minutes in advance), dispute resolution procedures (including providing MTM with information to help resolve grievances or inquiries), accident/investigation procedures, and all terms and provisions in MTM's Transportation Provider Handbook (including that all calls, such as those from clients, be answered immediately or returned within 10 minutes).

29.     MTM reserves the right to terminate the subcontracts immediately for, among other enumerated reasons, good cause as determined by MTM.

30.     MTM further reserves the right to amend the subcontracts at its sole discretion.

31.     The subcontractors agree, as part of their subcontracts, to perform any and all trips assigned to them by MTM.

32.     Many subcontractors work exclusively for MTM under the D.C. Contracts or receive a substantial portion of their business from MTM's D.C. Contracts.

33.     Through its subcontracts, MTM controls many aspects of the drivers' terms and conditions of employment.

34.     MTM controls the hiring of drivers working under the D.C. Contracts in at least the following ways:

      a.     MTM prohibits the subcontractors from using any drivers on the D.C. Contracts who have not been fully credentialed and approved by MTM. This credentialing includes background checks and drug and alcohol testing. MTM explicitly precludes the use under the D.C. Contracts of drivers with certain convictions or flags on their background checks or who otherwise fail MTM's background testing.

      b.     MTM requires that all drivers complete and pass training, led by MTM-hired instructors and conducted at MTM's facilities, covering topics ranging from defensive driving to CPR, as well as other subjects hosted by the subcontractors and with which the subcontractors must certify compliance and passing.

      c.     MTM further requires that drivers working under the D.C. Contracts must possess a valid driver's license, be at least 21 years old, communicate in English, be physically able to assist clients, drive in a professional and safe manner, maintain acceptable standards of dress and personal hygiene, and maintain certain conduct standards (e.g., not smoking in the vehicle).

      d.     MTM reserves the right in its subcontracts to disapprove the hiring of, or suspend, any driver for good cause determined within MTM's sole discretion.

      e.     Finally, MTM prohibits its subcontractors from further subcontracting their services under the D.C. Contracts—and thereby using additional drivers on the D.C.

Contracts—without prior written approval from MTM and the satisfaction of MTM's complete credentialing program for subcontractors.

35.     MTM also exerts control over the drivers' working conditions in the following ways:

a.     MTM precludes drivers from engaging in certain conduct while working, including smoking in the vehicle or permitting others to smoke in the vehicle, eating while transporting clients, making personal stops that MTM has not authorized, and wearing headphones while driving.

b.     MTM further requires that drivers report passenger noncompliance with similar smoking and eating requirements to MTM.

c.     MTM requires that customer complaints about drivers' performance be reported to MTM.

36.     MTM sets similarly detailed requirements for the vehicles used under the D.C. Contracts, including that the vehicles must maintain interior signage displaying MTM's name and contact information and exterior signage identifying the subcontractor's name, and that daily pre-trip inspections are required and must be documented. MTM further retains the discretion to require that vehicles it did not approve be taken out of service.

37.     Moreover, MTM requires that the subcontractors retain certain records in the drivers' personnel files, including the results of background checks, driver history checks, and drug tests; training certifications; and other personnel documents.  MTM mandates that the subcontractors provide these personnel files to MTM, and that the subcontractors ensure the drivers are insured, listing MTM as an "Additional Insured" on the insurance policies.

38.     MTM also maintains its own personnel file for each driver that provides NEMT services under the D.C. Contracts.

39.     Finally, MTM requires that subcontractors comply with the District of Columbia Living Wage Act of 2006 in paying all wages for work pursuant to the D.C. Contracts.

40.     Notably, as part of its responsibilities under the D.C. Contracts, MTM has consistently agreed to comply with the terms of the District of Columbia's Living Wage Act and other wage laws in paying drivers working under the D.C. Contracts.

41.     Notwithstanding these contractual and legal obligations, MTM has failed to ensure the drivers were compensated in compliance with the Living Wage Act and other wage laws.

**C.      The Drivers and Their Daily Jobs**

42.     Plaintiffs and those similarly situated are or were employed by MTM as NEMT drivers. Every workday, they received assignments to pick up Medicaid consumers and transport those consumers to and from various medical appointments.

43.     These drivers each worked continuous workdays from the moment they started their first run to transport a client until the moment they either finished their last drop off or returned the vehicle, including the transportation of each patient to and from various appointments.

44.     Plaintiffs and those similarly situated are or were usually paid a flat rate for their services.

45.     Most weeks, Plaintiffs and those similarly situated work or worked over 40 hours.

46.     Each of the named Plaintiffs typically worked over 60 hours per week.

47.     Plaintiffs and those similarly situated have rarely if ever been paid an overtime premium for time worked over 40 hours per week.

48.     The flat rates paid to Plaintiffs and those similarly situated, when divided by the number of hours worked, regularly fell below the minimum wage and the living wage rates applicable at the time the payments were made.

### i.     Plaintiff Isaac Harris

49.     Mr. Harris was employed by and worked for MTM as an NEMT driver under the D.C. Contracts from approximately March 11, 2016 through approximately September 24, 2016 (through subcontractor Star Transportation) and from approximately November 2016 to the present (through subcontractor MBI Logistics LLC).

50.     In order for Mr. Harris to be authorized as a driver, MTM required that Mr. Harris pass a background check and a drug test.

51.     MTM also required that Mr. Harris complete training at MTM's office led by MTM instructors. Mr. Harris received certificates of successful completion for this training from MTM, which MTM required before authorizing him to drive. Periodically, MTM required that Mr. Harris complete retraining at MTM's office and achieve recertification to continue driving under the D.C. Contracts.

52.     Throughout his employment with MTM under the current D.C. Contract, Mr. Harris's duties consisted of obtaining his schedule of MTM clients, transporting MTM's clients to and from medical appointments, receiving client signatures on log sheets verifying pick-up and drop-off, and ensuring that his vehicle and uniform complied with MTM's policies and standards.

53.     Typically, Mr. Harris was not provided time for lunch or rest breaks. When he had time between scheduled trips, he was assigned another client trip.

54.     During his 2016 employment through subcontractor Star Transportation, Mr. Harris was compensated a total of $463 per week.

55.     Mr. Harris regularly worked at least 65 hours per week during his time with Star Transportation. His regular schedule of work was Monday, Wednesday, and Friday from approximately 7:00 a.m. until approximately 7:00 p.m., Tuesday and Thursday from approximately 7:00 a.m. until approximately 5:00 p.m., and Saturdays from approximately 5:00 a.m. until approximately 2:00 p.m.

56.     During his 2016 employment through subcontractor Star Transportation, Mr. Harris's effective hourly wage was approximately $7.12 per hour.

57.     While working with subcontractor Star Transportation, Mr. Harris never received a premium rate for time worked over 40 hours in a work week.

58.     On several occasions in 2016, Mr. Harris complained to subcontractor Star Transportation about his illegally low wages, but he never received the full wages to which he was entitled by law.

59.     Midway through his 2016 employment with subcontractor Star Transportation, Mr. Harris wrote to Star Transportation asking to be paid the wages he was owed from March 2016 through June 2016. Mr. Harris resolved his dispute with Star Transportation over its responsibility for any back wages through June 18, 2016. Even after this resolution, however, there was no increase in Mr. Harris's wages: he continued to be paid only $463 per week for the duration of his work with Star Transportation.

60.     Mr. Harris confronted subcontractor Star Transportation for a final time on September 23, 2016, requesting to be paid for all time he worked.

61.     Mr. Harris was terminated by subcontractor Star Transportation on September 24, 2016.

62.     On or about November 2016, Mr. Harris was rehired as a driver by MTM through subcontractor MBI Logistics LLC. He is currently employed in this position.

63.     When Mr. Harris began working with subcontractor MBI, he was paid $13.85 per hour and was paid one-and-a-half times that rate for the hours he worked in excess of forty hours per week.

64.     Since April 2017, Mr. Harris has been paid a flat rate of $1200.33 biweekly for all weeks in which he worked over 40 hours. During this time period, he continued to be paid the $13.85 hourly rate in weeks he worked less than 40 hours.

65.     Mr. Harris has worked an average of 52.5 hours per week while working with subcontractor MBI. His regular schedule is 6:00 a.m. until approximately 4:30 p.m. Monday through Friday.

66.     Since April 2017, Mr. Harris's effective hourly wage has been approximately $11.43 per hour for weeks in which he worked his regular 52.5 hour per week schedule. Additionally, he has not been paid a premium rate for hours he has worked in excess of forty hours per week.

**ii.     Plaintiff Darnell Frye**

67.     Mr. Frye was employed by and worked for MTM as an NEMT driver under the D.C. Contracts from approximately October 2015 through approximately June 2016 (through subcontractor Star Transportation).

68.     MTM required that Mr. Frye pass a background check and a drug test before he was eligible to drive under the D.C. Contracts.

69.     MTM also required that Mr. Frye complete training at MTM's office led by MTM instructors. Mr. Frye received certificates of successful completion for this training from MTM, which MTM required before authorizing him to drive. Periodically, MTM required Mr. Frye to complete retraining at MTM's office and achieve recertification to continue driving under the D.C. Contracts.

70.     Throughout his employment with MTM under the D.C. Contracts, Mr. Frye's job duties consisted of obtaining his schedule of MTM clients, transporting MTM's clients to and from medical appointments, receiving client signatures on log sheets that verified pick-up and drop-off times, and ensuring that his vehicle and uniform complied with MTM's policies and standards.

71.     Typically, Mr. Frye was not provided time for lunch or rest breaks. When he had time between scheduled trips, he was assigned another client trip. He regularly worked full days without a break, under threat of discipline, lost wages, or termination if he declined a trip in order to take a break.

72.     From October 2015 through June 2016, Mr. Frye was compensated a total of $350 per week.

73.     Throughout his tenure working under the D.C. Contracts, Mr. Frye's schedule of work was every weekday from approximately 6:00 a.m. until at least 7:00 p.m. and at least one day every weekend from 9:00 a.m. until at least 5:00 p.m. This schedule resulted in approximately 73 hours worked per week.

74.     From October 2015 through June 2016, Mr. Frye's effective hourly wage was approximately $4.79 per hour.

75.     Mr. Frye never received a premium rate for hours worked over 40 in a work week.

76.     Mr. Frye complained about the underpayment of his wages to MTM during his trainings with the company. MTM refused to take any remedial action and improperly disclaimed responsibility.

77.     Mr. Frye also raised the issue of underpayment of his wages with subcontractor Star Transportation, but he never received any increase in his wages.

**iii.    Plaintiff Leo Franklin**

78.     Mr. Franklin was employed by and worked for MTM as an NEMT driver under the D.C. Contracts from approximately January 2014 until approximately July 2014 (with subcontractor Generations) and from approximately July 2014 until approximately September 2016 (with subcontractor Kolex Group).

79.     MTM required that Mr. Franklin pass a background check and a drug test before authorizing him to drive under the D.C. Contracts.

80.     MTM also required that Mr. Franklin complete training at MTM's office— including CPR, first aid, and defensive driving—led by MTM instructors. Mr. Franklin received certificates of successful completion for this training from MTM, which MTM required before authorizing him to drive. Periodically, MTM required that Mr. Franklin complete retraining at MTM's office and achieve recertification to continue driving under the D.C. Contracts.

81.     Throughout his employment with MTM under the D.C. Contracts, Mr. Franklin's duties consisted of obtaining his schedule of MTM clients, transporting MTM's clients to and

from medical appointments, receiving client signatures on log sheets that verified pick-up and drop-off times, and ensuring that his vehicle and uniform complied with MTM's policies and standards.

82.     MTM randomly inspected Mr. Franklin's vehicle and uniform; if they did not comply with MTM's standards, Mr. Franklin understood that MTM could remove him from providing NEMT services to MTM's clients under the D.C. Contracts.

83.     Typically, Mr. Franklin was not provided time for lunch or rest breaks. When he had time between scheduled trips, he was assigned another client trip. He regularly worked full days without a break, under threat of discipline, lost wages, or termination if he declined a trip in order to take a break.

84.     When Mr. Franklin started working for MTM through subcontractor Generations in January 2014, he was compensated a total of $450 per week.

85.     When he began working for MTM through subcontractor Kolex Group in 2015, he was compensated a total of $325 per week.

86.     While working with subcontractor Kolex Group, Mr. Franklin complained about his wages repeatedly and received occasional wage increases of $25 per week when he complained. The highest wage he was ever paid for his work through Kolex Group was $475 per week.

87.     Throughout his employment, Mr. Franklin's regular schedule of work was Monday through Friday from between 5:00 and 6:00 a.m. until between 5:00 and 8:00 p.m. He typically was not done working until after 7:00 p.m. He also worked every other Saturday from between 5:00 and 6:00 a.m. until between 5:00 and 8:00 p.m. This schedule resulted in approximately 55 to 90 hours per week, with a typical week exceeding 70 hours.

88.     From January 2014 through July 2015, Mr. Franklin's effective hourly wage was approximately $5.00 to $8.18 per hour, and typically was below $6.43 per hour.

89.     From July 2015 through September 2016, Mr. Franklin's effective hourly wage was approximately $3.61 to $8.63. Even when he received his maximum weekly pay of $475 per week, Mr. Franklin's effective hourly wage was typically less than $6.79 per hour.

90.     Mr. Franklin never received a premium rate for time worked over 40 hours in a work week.

**D.     MTM is Legally Obligated to Pay Its Drivers in Accordance with the Law**

91.     Plaintiffs and those similarly situated are entitled to be paid the statutorily mandated minimum wage for all hours worked under the D.C. Contracts.

92.     Plaintiffs and those similarly situated are entitled to be paid the statutorily mandated living wage for all hours worked under the D.C. Contracts.

93.     Plaintiffs and those similarly situated are entitled to be paid one-and-a-half times their regular rate (the overtime premium)—which must be at least the living wage rate, as specified in the D.C. Contracts—for time worked over 40 hours per workweek.

94.     None of the exemptions from overtime or other wage payments—under either federal or District of Columbia law—apply to Plaintiffs or to those similarly situated.

95.     As Plaintiffs' employer and/or their joint employer, MTM is responsible for paying, or for ensuring the payment of, all wages and premiums required by law.

96.     MTM is jointly and severally liable for any unpaid wages owed the drivers.

97.     In addition, as a general contractor, MTM is responsible under District of Columbia law for ensuring that its subcontractors pay minimum, living, and overtime wages in compliance with the law.

98.     Furthermore, MTM and the District of Columbia entered into contracts in which MTM promised to ensure that the drivers were paid no less than the living wage.

99.     The District of Columbia intended that the drivers benefit from MTM's performance of this aspect of the contracts.

100.     MTM deprived the drivers working under the D.C. Contracts of proper minimum wages by paying them less than the rate established by federal and D.C. law.

101.     MTM deprived the drivers working under the D.C. Contracts of proper living wages by paying them less than the rate established by D.C. law.

102.     MTM deprived the drivers working under the D.C. Contracts of proper overtime compensation by failing to pay an overtime premium rate for all time worked over 40 hours in a work week.

103.     MTM knew or should have known that the drivers working under the D.C. Contracts were being compensated at rates that violated federal and D.C. law.

104.     MTM recklessly chose to disregard the consequences of its actions.

105.     As a result of MTM's unlawful conduct, Plaintiffs and all others similarly situated have been denied payment at the legally required rates for all time worked and, therefore, they are entitled to their unpaid wages, liquidated damages, and penalties.

## FLSA COLLECTIVE ACTION ALLEGATIONS

106.     MTM failed to pay the Plaintiffs and all others similarly situated the minimum wages and overtime premium rates required by the FLSA, 29 U.S.C. § 201, *et seq.*

107.     MTM failed to pay the Plaintiffs and all others similarly situated the overtime premium rate for all time worked over 40 hours per week, in violation of the overtime provisions of the FLSA.

108.    MTM failed to pay the Plaintiffs and all others similarly situated an effective hourly rate at or above the federal minimum wage rate of $7.25 per hour through its practices of paying a flat rate, generally ranging from $325 to $475 per week, and requiring the Plaintiffs and all others similarly situated to work more than 60 hours in a typical week.

109.    MTM's conduct was willful.

110.    This action can, and should, be maintained as a collective action pursuant to 29 U.S.C. § 216(b) for all claims to unpaid overtime compensation, minimum wages, and liquidated damages that can be redressed under the FLSA.

111.    Plaintiffs seek certification of these claims as a collective action on behalf of all NEMT drivers who worked under MTM's D.C. Contracts or any future NEMT contract with the District of Columbia at any time during the period beginning three years prior to the date on which this action is filed and continuing to the date on which notice is issued of the opportunity to join this action.

112.    Upon information and belief, there are hundreds of similarly situated current and former NEMT drivers who have been subjected to the same unlawful conduct that the Plaintiffs challenge herein.

113.    Members of the proposed collective action are similarly situated.

114.    Members of the proposed collective action have been subjected to the same or substantially the same pay policies and practices.

115.    Members of the proposed collective action have been subjected to the same or substantially the same policy or practice that required or permitted them to perform work in excess of 40 hours per workweek for the benefit of MTM, without compensating such time at the premium rate of one-and-a-half times the base rate of pay.

116.    Members of the proposed collective action have been subjected to the same or substantially the same policy or practice that required or permitted them to perform work for MTM's benefit without compensation at the FLSA-mandated minimum wage.

117.    The identities of the members of the proposed collective action are known to MTM and can be located through MTM's records.

118.    These individuals would benefit from the issuance of Court-supervised Notice and the opportunity to join this lawsuit.

119.    Plaintiffs and the members of the proposed collective action should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

### D.C. LAW CLAIMS BROUGHT PURSUANT TO RULE 23(B)(3)

120.    Pursuant to Federal Rule of Civil Procedure 23 and D.C. Rule of Civil Procedure 23, Plaintiffs bring class-action claims for unpaid wages (including overtime compensation and minimum wages) under the District of Columbia's Minimum Wage Act (MWA), D.C. Code § 32-1001, *et seq.*; Living Wage Act (LWA), D.C. Code § 2-220.01, *et seq.*; and Wage Payment and Collection Law (WPCL), D.C. Code § 32-1302; as well as a D.C. contract claim.

121.    Plaintiffs bring these class-action claims on behalf of themselves and all other NEMT drivers who have worked or will work under MTM's D.C. Contracts or any future NEMT contract with the District of Columbia at any time from three years prior to the filing of this action through the date on which notice is issued affording the right to opt out of any class certified pursuant to Rule 23(b)(3).

122.    Members of the proposed Rule 23 Class are readily ascertainable. The identity of class members may be determined from MTM's records, including time and trip records and other records required to be maintained under MTM's contract with the District of Columbia.

123.     The proposed Class meets all the requirements of Rule 23(a) and (b)(3):

a.       Numerosity: Upon information and belief, at least several hundred persons have worked for MTM under the D.C. Contracts and have been subjected to the challenged practices. Therefore, joinder of all class members would be impracticable.

b.       Commonality: Plaintiffs and all members of the Proposed Rule 23 Class have been compensated pursuant to the unlawful practices alleged herein and, therefore, one or more questions of law or fact are common to the Proposed Rule 23 Class. These common questions include, but are not limited to, the following:

i.      Whether MTM is an employer and/or joint employer of members of the Proposed Rule 23 Class

ii.     Whether MTM failed or refused to pay Plaintiffs and members of the Proposed Rule 23 Class at or above the minimum-wage rate mandated by the District of Columbia for all time worked;

iii.    Whether MTM's failure or refusal to pay wages at or above the D.C. minimum-wage rate violated the MWA;

iv.     Whether MTM's failure or refusal to pay wages at or above the D.C. minimum-wage rate was based on good faith or reasonable grounds;

v.      Whether MTM's failure or refusal to pay wages at or above the D.C. minimum-wage rate violated the WCPL;

vi.     Whether MTM's failure or refusal to pay wages at or above the D.C. minimum-wage rate was willful;

vii.    Whether MTM failed or refused to pay Plaintiffs and members of the Proposed Rule 23 Class living wages for all time worked within the meaning of the LWA;

viii.   Whether MTM's failure or refusal to pay such compensation violated the LWA;

ix.     Whether MTM's failure or refusal to pay such compensation violated the WCPL;

x.      Whether MTM's failure or refusal to pay living wages to members of the Proposed Rule 23 Class was willful;

xi.   Whether MTM failed or refused to pay Plaintiffs and members of the Proposed Rule 23 Class wages at overtime premium rates for all time worked in excess of 40 hours per week;

xii.   Whether MTM's failure or refusal to pay such compensation at overtime-premium rates violated the LWA;

xiii.   Whether MTM's failure or refusal to pay such compensation at overtime-premium rates violated the WCPL;

xiv.   Whether MTM's failure or refusal to pay compensation at overtime-premium rates was willful;

xv.   Whether the contracts between the District of Columbia and MTM required MTM to pay, or ensure the payment of, members of the Proposed Rule 23 Class at no less than the living wage; and

xvi.   Whether the District of Columbia intended that members of the Proposed Rule 23 Class benefit from the provisions requiring compliance with the LWA and WCPL in its contracts with MTM.

c.   Typicality: Plaintiffs and members of the proposed Class were subjected to the same unlawful policies, practices, and procedures and sustained similar losses, injuries, and damages. All class members were subjected to the same compensation practices by MTM, as alleged herein, and were denied payment of all earned wages, including minimum wages, living wages, and payment at premium rates for all time worked over 40 hours per week. Plaintiffs' claims are therefore typical of the claims that could be brought by any member of the Class, and the relief sought is typical of the relief that could be sought by each member of the Proposed Rule 23 Class in separate actions.

d.   Adequacy of Representation: Plaintiffs are able to fairly and adequately protect the interests of all members of the Class, as they are challenging the same practices as the class as a whole, and there are no known conflicts of interest between Plaintiffs and the members of the proposed Class. Plaintiffs have retained counsel who

have extensive experience with the prosecution of wage-and-hour claims and complex class-action litigation.

e.  Predominance and Superiority: The common questions identified above predominate over any individual issues. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

f.  Pursuit of this action as a class would provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the proposed Class.

## COUNT ONE

**Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.***
*On behalf of Plaintiffs and Members of the Proposed Collective Action*

124.  Plaintiffs incorporate by reference the allegations asserted above as if fully set forth herein.

125.  At all times relevant to this action, MTM was an employer and Plaintiffs and members of the proposed collective action were its employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d), (e).

126.  MTM failed or refused to compensate Plaintiffs and members of the proposed collective action at the federal minimum-wage rate for all time worked, in violation of the FLSA.

127.  In failing to compensate Plaintiffs and members of the proposed collective action at the federal minimum-wage rate, MTM did not and has not made a good-faith effort to comply with the FLSA.

128.  MTM knew that Plaintiffs and members of the proposed collective action were paid effective hourly rates below the federal minimum-wage rate, and MTM willfully failed or

refused to pay Plaintiffs and members of the proposed collective action the required federal minimum wage.

129.    MTM also failed or refused to compensate Plaintiffs and members of the proposed collective action at the premium rate of pay required by the FLSA for all time worked in excess of 40 hours in a work week, in violation of the FLSA.

130.    In failing to compensate Plaintiffs and members of the proposed collective action at overtime-premium rates, MTM did not make and has not made a good-faith effort to comply with the FLSA.

131.    MTM knew Plaintiffs and members of the proposed collective action worked more than forty hours per work week, and MTM willfully failed or refused to pay Plaintiffs and members of the proposed collective action wages at the required overtime rates. *See* 29 U.S.C. § 255.

132.    Therefore, Plaintiffs and members of the proposed collective action are entitled to recover back pay for time worked at an hourly rate below the federal minimum wage and for time worked above forty hours per week at a rate below the premium pay rate required for such overtime for a period beginning three years prior to the filing of this action as well as liquidated damages and such other legal and equitable relief as the Court deems just and proper.


### COUNT TWO

**D.C. Minimum Wage Act, D.C. Code § 32-1001, *et seq.***
*On behalf of Plaintiffs and the Rule 23 Class*

133.    Plaintiffs incorporate by reference the allegations asserted above as if fully set forth herein.

134.    At all times relevant to this action, MTM was an employer and Plaintiffs and the proposed Rule 23 Class Members were its employees within the meaning of the MWA. *See* D.C. Code § 32-1002(2), (3).

135.    The minimum-wage provisions of the MWA, D.C. Code §§ 32-1003, 32-1012, and its supporting regulations, D.C. Mun. Regs. tit. 7, § 900, *et seq.*, apply to MTM's employment of Plaintiffs and the proposed class.

136.    The overtime-wage provisions of the MWA, D.C. Code § 32-1003(c), and its supporting regulations, D.C. Mun. Regs. tit. 7, § 902.6, apply to MTM's employment of Plaintiffs and the proposed class.

137.    MTM has failed to pay Plaintiffs and members of the proposed Rule 23 Class the proper minimum and overtime wages to which they are or were entitled under the MWA, D.C. Code § 32-1003(a).

138.    By MTM's persistent failure to pay Plaintiffs and the Rule 23 Class Members proper minimum wages and proper overtime wages for time worked in excess of 40 hours per week, it has willfully violated the MWA.

139.    Due to MTM's violations of the MWA, Plaintiffs and the Rule 23 Class Members are entitled to recover from MTM their unpaid minimum and overtime wages, statutory penalties, and liquidated damages. *See* D.C. Code § 32-1308(a)(1)(A).

140.    In addition or in the alternative, Plaintiffs and members of the Rule 23 Class were employees of the subcontractors working for MTM as the general contractor under the D.C. Contracts.

141.    As the general contractor, MTM is jointly and severally liable for the subcontractors' failure to ensure Plaintiffs and members of the proposed Rule 23 Class have been

paid wages at the proper minimum and overtime rates to which they have been entitled. *See* D.C. Code § 32-1012(c).

142.    Due to the subcontractors' violations of the MWA, Plaintiffs and members of the proposed Rule 23 Class are entitled to recover from MTM as the general contractor their unpaid wages, statutory penalties, and liquidated damages. *See* D.C. Code § 32-1308(a)(1)(A).

### COUNT THREE

#### D.C. Living Wage Act, D.C. Code § 2-220.01, *et seq.*
*On behalf of Plaintiffs and the Rule 23 Class*

143.    Plaintiffs incorporate by reference the allegations asserted above as if fully set forth herein.

144.    MTM was a "recipient of contracts or government assistance in the amount of $100,000 or more," as that term is defined in the LWA. D.C. Code §§ 2-220.02(2)-(3), 2-220.03(a).

145.    At all times relevant to this action, Plaintiffs and the proposed Rule 23 Class members were affiliated employees of MTM within the meaning of the LWA, D.C. Code § 2-220.02(1).

146.    The living wage provisions of the LWA, D.C. Code §§ 2-220.01(4), 2-220.03, 2-220.11, and its supporting regulations, D.C. Mun. Regs. tit. 7, § 1000, *et seq.*, apply to MTM's employment of Plaintiffs and the proposed class.

147.    MTM has failed to pay Plaintiffs and members of the proposed Rule 23 Class the proper living wages to which they have been entitled under the LWA for their work under a contract with the District of Columbia government. *See* D.C. Code §§ 2-220.01(4), 2-220.03, 2-220.11.

148.     By MTM's persistent failure to pay Plaintiffs and members of the proposed Rule 23 Class the statutorily mandated living wage for all hours worked under MTM's contract with the District of Columbia, it has willfully violated the LWA.

149.     Due to MTM's violations of the LWA, Plaintiffs and members of the proposed Rule 23 Class are entitled to recover from MTM their unpaid living wages, liquidated damages, and statutory penalties. *See* D.C. Code § 32-1308(a)(1)(A).

150.     In addition or in the alternative, Plaintiffs and members of the Rule 23 Class were employees of the subcontractors working for MTM as the general contractor under the D.C. Contracts.

151.     As the general contractor, MTM is jointly and severally liable for the subcontractors' failure to pay Plaintiffs and members of the proposed Rule 23 Class the proper living wages to which they were entitled. *See* D.C. Code § 32-1303(5).

152.     Due to the Subcontractors' violations of the LWA, Plaintiffs and members of the proposed Rule 23 Class are entitled to recover from MTM as the general contractor their unpaid living wages, statutory penalties, and liquidated damages. *See* D.C. Code § 32-1308(a)(1)(A).

## COUNT FOUR

**D.C. Wage Payment and Collection Law, D.C. Code § 32-1301, *et seq.***
*On behalf of Plaintiffs and the Rule 23 Class*

153.     Plaintiffs incorporate by reference the allegations asserted above as if fully set forth herein.

154.     At all times relevant to this action, MTM was an employer and Plaintiffs and members of the proposed Rule 23 Class were its employees within the meaning of the WPCL. *See* D.C. Code § 32-1301(1B), (2).

155.   Plaintiffs and members of the proposed Rule 23 Class earned wages payable at regular and overtime rates from their work for MTM.

156.   MTM unlawfully failed or refused to pay Plaintiffs and members of the proposed Rule 23 Class all wages due—including the living wage, the minimum wage rate, and the premium rate for overtime—on the regular payday, in violation of the WPCL.

157.   By MTM's persistent failure to pay Plaintiffs and members of the proposed Rule 23 Class all wages due on the regular payday, it has willfully violated the WPCL.

158.   Due to MTM's violations of the WPCL, Plaintiffs and members of the proposed Rule 23 Class are entitled to recover from MTM their unpaid wages, statutory penalties, and liquidated damages. *See* D.C. Code §§ 32-1303(1)-(4), 32-1308(a)(1)(A).

159.   MTM's failure or refusal to pay all required wages was not the result of a bona fide dispute, as defined by the WPCL, nor did MTM follow the procedures necessary for asserting such a dispute under the WPCL. *See* D.C. Code § 32-1304.

160.   In addition or in the alternative, Plaintiffs and members of the proposed Rule 23 Class were employees of the subcontractors working for MTM as the general contractor under the D.C. Contracts.

161.   As the general contractor, MTM is jointly and severally liable for the subcontractors' failure to pay Plaintiffs and members of the proposed Rule 23 Class all wages due on the regular payday. *See* D.C. Code § 32-1303(5).

162.   Due to the subcontractors' violations of the WPCL, Plaintiffs and members of the proposed Rule 23 Class are entitled to recover from MTM as the general contractor their unpaid wages, statutory penalties, and liquidated damages. *See* D.C. Code §§ 32-1303(4), 32-1308(a)(1)(A).

## COUNT FIVE

### Breach of Contract
*On behalf of Plaintiffs and the Rule 23 Class as Third Party Beneficiaries*

163.     Plaintiffs incorporate by reference the allegations asserted above as if fully set forth herein.

164.     Plaintiffs and members of the proposed Rule 23 Class have been employed as drivers pursuant to contracts between the District of Columbia and MTM.

165.     The contracts between the District of Columbia and MTM require that MTM pay Plaintiffs and the Rule 23 Class Members no less than the living wage.

166.     Plaintiffs and the Rule 23 Class Members are intended beneficiaries of MTM's contractual obligation to pay the drivers no less than the living wage.

167.     MTM breached its contracts with the District of Columbia by paying Plaintiffs and members of the proposed Rule 23 Class less than the living wage for all time worked under the contracts.

168.     As third-party beneficiaries of the contracts between MTM and the District of Columbia, Plaintiffs and members of the proposed Rule 23 Class may enforce those provisions of the contracts between the District of Columbia and MTM that require MTM to pay the drivers no less than the living wage.

169.     MTM is liable to Plaintiffs and members of the proposed Rule 23 Class for breaching its obligation to ensure they have been paid no less than the living wage, and Plaintiffs and members of the proposed Rule 23 Class are entitled to specific performance of this provision of the contracts for the period beginning three years prior to the filing of the Complaint through the date in which relief is granted.

## PRAYER FOR RELIEF

Plaintiffs, and all those similarly situated, collectively request that this honorable Court:

1.      Award Plaintiffs and all similarly situated employees actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and to members of the collective action as provided by the FLSA. *See* 29 U.S.C. § 216(b).

2.      Award Plaintiffs and members of the proposed Rule 23 Class actual damages for unpaid wages, penalties, and treble damages as liquidated damages for the unpaid wages found due to Plaintiffs and to members of the proposed Class as provided by the MWA, LWA, and WPCL. D.C. Code §§ 32-1303(4), 32-1308(a)(1)(A).

3.      Award Plaintiffs and all those similarly situated post-judgment interest at the statutory rate as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to District of Columbia law, D.C. Code § 28-3302(c).

4.      Award Plaintiffs and all those similarly situated attorneys' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the MWA, LWA, and WPCL, D.C. Code § 32-1308(a)(1)(A).

5.      Declare that Plaintiffs and all those similarly situated are intended beneficiaries of the provisions of the contracts between the District of Columbia and MTM in which MTM promised to pay the drivers no less than the living wage; declare that MTM breached that provision of the contracts; and award Plaintiffs and all those similarly situated damages resulting from MTM's breach.

6.      Award Plaintiffs and all those similarly situated further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs request a trial by jury on all matters so triable.

Dated:  July 13, 2017                          Respectfully submitted,


                                               /s/Joseph M. Sellers
                                               Joseph M. Sellers (#318410)
                                               Miriam R. Nemeth (#1028529)*
                                               Cohen Milstein Sellers & Toll PLLC
                                               1100 New York Avenue NW, Fifth Floor
                                               Washington, DC 20005
                                               Telephone (202) 408-4600
                                               jsellers@cohenmilstein.com
                                               mnemeth@cohenmilstein.com

                                               Michael T. Kirkpatrick (#486293)
                                               Patrick D. Llewellyn (#1033296)
                                               Public Citizen Litigation Group
                                               1600 20th Street NW
                                               Washington, DC 20009
                                               Telephone (202) 588-1000
                                               mkirkpatrick@citizen.org
                                               pllewellyn@citizen.org

                                               *Attorneys for Plaintiffs*
                                               *Application for admission pending*