**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ISAAC HARRIS, et al. </br>                    Plaintiffs, </br> </br> v. </br> </br> MEDICAL TRANSPORTATION </br> MANAGEMENT, INC., </br> </br>                    Defendant. | Civil Action No. 1:17-cv-01371 |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS .......................................................................................... 2

III. ARGUMENT ............................................................................................................... 5

    A. The Remedial Purposes of the FLSA Favor Allowing Plaintiffs to Pursue their Claims Collectively and Facilitating Notice to Potential Collective Members ........................................................................................................... 5

    B. Plaintiffs Have Met Their "Modest" Burden of Demonstrating that Plaintiffs and Putative Collective Members are "Similarly Situated" to Support Conditional Certification and Notice ....................................................... 6

    C. MTM's Challenge to Its Status as an Employer Need Not Delay a Decision on Plaintiffs' Motion for Conditional Certification .............................. 10

    D. Plaintiffs' Proposed Notice Provides the Information Necessary to Make an Informed Decision about Opting in to the Case, and the Court Should Direct the Issuance of this Notice to Potential Collective Members ................... 13

IV. CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ayala v. Tito Contractors*,
  12 F. Supp. 3d 167 (D.D.C. 2014)................................................................................4, 8, 14

*Banks v. Wet Dog, Inc.*,
  No. RDB-13-2294, 2015 WL 433631 (D. Md. Feb. 2, 2015) ......................................................4

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981).........................................................................................................5

*Blount v. U.S. Sec. Assocs.*,
  945 F. Supp. 2d 88 (D.D.C. 2013).................................................................................7, 14

*Butler v. DirectSat USA, LLC*,
  876 F. Supp. 2d 560 (D. Md. 2012)....................................................................................13

*Castillo v. P & R Enters., Inc.*,
  517 F. Supp. 2d 440 (D.D.C. 2007)...............................................................................4, 14

*Encinas v. J.J. Drywall Corp.*,
  265 F.R.D. 3 (D.D.C. 2010)........................................................................................7, 8, 15

*Freeman v. MedStar Health Inc.*,
  187 F. Supp. 3d 19 (D.D.C. 2016)........................................................................................7

*Grayson v. K Mart Corp.*,
  79 F.3d 1086 (11th Cir. 1996) .........................................................................................6, 7

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. 2013)..............................................................................14, 15

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989).................................................................................................5, 6, 8

*Houston v. URS Corp.*,
  591 F. Supp. 2d 827 (E.D. Va. 2008) ....................................................................................8

*Hunter v. Sprint Corp.*,
  346 F. Supp. 2d (D.D.C. 2004).............................................................................................6

*Lusardi v. Lechner*,
  855 F.2d 1062 (3d Cir. 1988)..............................................................................................12

*Marroquin v. Canales*,
   236 F.R.D. 257 (D. Md. 2006) .................................................................................................8

*McKinney v. United Stor-All Ctrs., Inc.*,
   585 F. Supp. 2d 6 (D.D.C. 2008) .............................................................................................8

*Monroe v. FTS USA, LLC*,
   860 F.3d 389 (6th Cir. 2017) ...................................................................................................5

*\*Rivera v. Power Design, Inc.*,
   172 F. Supp. 3d 321 (D.D.C. 2016) ................................................................................ passim

*Santiago v. Tequila Gastropub LLC*,
   No. 16-CV-7499 (JMF), 2017 WL 1283890 (S.D.N.Y. Apr. 5, 2017) ...................................15

*Schear v. Food Scope Am., Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) ...........................................................................................15

**STATUTES AND REGULATIONS**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ............................................................... passim

29 U.S.C. § 202(a) ..........................................................................................................................5

29 U.S.C. § 206 ..........................................................................................................................1, 5

29 U.S.C. § 207 ..........................................................................................................................1, 5

*29 U.S.C. §§ 216(b) ................................................................................................................1, 6, 7

*29 U.S.C. § 256(b) ...............................................................................................................1, 6, 7, 8

29 C.F.R. § 778.109 .......................................................................................................................9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................10

Federal Rule of Civil Procedure 23 ...............................................................................................6

iii

**I.     INTRODUCTION**

Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA), Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin (collectively, Plaintiffs or Named Plaintiffs) seek an order conditionally certifying a collective action to pursue the FLSA claims set forth in the Complaint and authorizing notice to all similarly situated persons of the opportunity to participate in the collective action.  The three Named Plaintiffs and the members of the collective they seek to represent worked for the same employer, under the same rules and workplace conditions, and with the same job responsibilities.  They were all subjected to Defendant Medical Transportation Management, Inc.'s (MTM) common scheme to violate their FLSA rights to legally mandated wages.  Specifically, MTM failed to pay Plaintiffs the minimum wage for their hours worked, in violation of 29 U.S.C. § 206, and the required time-and-a-half rate for time worked over forty hours per week, in violation of 29 U.S.C. § 207.  As set forth in detail below, Plaintiffs should be permitted to proceed collectively to address these claims because they meet the modest threshold showing that they are similarly situated.  Plaintiffs therefore request an order granting their Motion for Conditional Certification and directing issuance of notice of this lawsuit to the following employees:

> All individuals who worked under the non-emergency medical transportation (NEMT) contracts between Medical Transportation Management, Inc. and the District of Columbia (the D.C. Contracts) at any time during the period from July 13, 2014 to the present who performed driving services under the contracts.

This request is highly time-sensitive, as the limitations periods for the putative collective members' claims continue to run until these individuals file consent forms opting in to this lawsuit.  *See* 29 U.S.C. § 256(b).  MTM's Motion to Dismiss, *see* Dkt. 10, contests its very status as an employer.  The Court need not reach this issue to resolve Plaintiffs' request for conditional certification.  *See, e.g.*, *Rivera v. Power Design, Inc.*, 172 F. Supp. 3d 321, 327 (D.D.C. 2016)

(determining that joint-employment issues are properly reserved until later in the proceedings); *see also* Pls.' Resp. to Mot. to Dismiss, Dkt. 13.  However, if the Court believes it necessary to resolve MTM's Motion to Dismiss before or at the same time as Plaintiffs' Motion for Conditional Certification, Plaintiffs urge the Court to address both matters with dispatch or to direct that the putative collective members' statutes of limitations be tolled until both motions can be decided.  The passage of time without such tolling will substantially diminish the putative collective members' claims.

## II.     STATEMENT OF FACTS

MTM provides non-emergency medical transportation (NEMT) services to residents of the District of Columbia through a series of contracts with the District (the D.C. Contracts).  *See* Compl., Dkt. 1, ¶¶ 21-22.  MTM executes these contracts through subcontractors who perform the actual driving services.  *See id.* ¶ 26.  MTM retains substantial control over the subcontractors and the drivers working under the D.C. Contracts, including by hiring and firing drivers (or, at minimum, directing their hire, fire, and/or discipline), training drivers, paying drivers and/or ensuring that their payment complies with the law, retaining records on the drivers, establishing the terms and conditions of their employment and day-to-day responsibilities, and reserving the right to terminate relationships with the subcontractors upon MTM's sole determination of "good cause."  *See id.* ¶¶ 25, 28-29, 31-40.  The terms of the subcontracts between MTM and its subcontractors are all substantially the same.  *See id.* ¶ 27.

Each of the Named Plaintiffs, as well as the collective members they seek to represent, was or continues to be employed by MTM[1] as an NEMT driver working under the D.C.

---

[1] For purposes of this motion, whether MTM constitutes a direct employer or a joint employer does not matter.

2

Contracts.  *See* Exh. 1, Decl. of Isaac Harris (Harris Decl.)[2] ¶ 1 (through subcontractors Star Transportation and MBI); Exh. 2, Decl. of Darnell Frye (Frye Decl.) ¶ 1 (through subcontractor Star Transportation); Exh. 3, Decl. of Leo Franklin (Franklin Decl.) ¶ 1 (through subcontractors Kolex Group and Generations); Exh. 4, Decl. of Ronald Jackson (Jackson Decl.), ¶ 1 (through subcontractor Mariet & B Transportation); Compl., Dkt. 1, ¶ 42.  All Plaintiffs were required to and did complete background checks, drug tests, and training mandated by MTM before they were permitted to work under the D.C. Contracts.  *See* Exh. 1, Harris Decl. ¶ 5; Exh. 2, Frye Decl. ¶ 4; Exh. 3, Franklin Decl. ¶ 4; *see also* Exh. 4, Jackson Decl. ¶ 4.  MTM also periodically required the Plaintiffs to complete retrainings in order to continue working under the D.C. Contracts.  *See* Exh. 1, Harris Decl. ¶ 5; Exh. 2, Frye Decl. ¶ 4; Exh. 3, Franklin Decl. ¶ 4; *see also* Exh. 4, Jackson Decl. ¶ 4.

As NEMT drivers, all of the Plaintiffs had the same job duties:  they transported MTM's clients to and from medical and other health-care appointments according to a daily schedule circulated by MTM, and they were responsible for a few ancillary tasks that were integral and indispensable to their primary duties (i.e., fueling their vehicle, obtaining client signatures on MTM's daily schedules).  *See* Exh. 1, Harris Decl. ¶¶ 2-3, 7, 13; Exh. 2, Frye Decl. ¶¶ 2, 6, 11; Exh. 3, Franklin Decl. ¶¶ 2, 6, 13; *see also* Exh. 4, Jackson Decl. ¶¶ 2, 7-8.  MTM supervised the drivers in the field and directed their termination or suspension if it deemed their conduct to fall below MTM's standards.  *See, e.g.*, Exh. 3, Franklin Decl. ¶ 2; Exh. 4, Jackson Decl. ¶ 12.

Under the D.C. Contracts, drivers worked continuous workdays from the moment they started their first trip—generally between 5:00 and 7:00 a.m.—until they finished their last trip—

---

[2] Mr. Harris has substantively approved the statements in this affidavit, but he was unable to meet with counsel to physically sign the declaration prior to filing.  Counsel will provide the Court with an updated signed declaration as soon as it is available.

almost always after 5 p.m. and generally between 7 p.m. and 9 p.m.; each of the Plaintiffs worked over 50 hours per week and often over 65 or 70 hours per week under these schedules. *See* Exh. 1, Harris Decl. ¶¶ 10-11; Exh. 2, Frye Decl. ¶ 9; Exh. 3, Franklin Decl. ¶¶ 9-10; Compl., Dkt. 1, ¶¶ 43, 45-46; *see also* Exh. 4, Jackson Decl. ¶ 9.  They did not regularly receive lunch breaks and were always on call for—and regularly asked to take on—additional trips. *See* Exh. 1, Harris Decl. ¶ 12; Exh. 2, Frye Decl. ¶ 10; Exh. 3, Franklin Decl. ¶ 12; *see also* Exh. 4, Jackson Decl. ¶ 10.

Due to the long hours each worked, the means by which Plaintiffs were paid failed to provide compensation at the minimum-wage rate established by the FLSA (at least $7.25 per hour at all times relevant to this case).  *See* Exh. 1, Harris Decl. ¶¶ 10-11 (approximately $7.12 per hour); Exh. 2, Frye Decl. ¶ 9 (approximately $4.79-$5.48 per hour); Exh. 3, Franklin Decl. ¶¶ 9-10 (approximately $4.64-$6.42); Compl., Dkt. 1, ¶ 48; *see also* Exh. 4, Jackson Decl. ¶ 9 (as low as $6.15 at times).  Plaintiffs also did not receive appropriate overtime wages for the hours they worked over forty per work week.[3]  *See* Exh. 1, Harris Decl. ¶ 10; Exh. 2, Frye Decl. ¶ 9; Exh. 3, Franklin Decl. ¶ 11; Compl., Dkt. 1, ¶ 47; *see also* Exh. 4, Jackson Decl. ¶ 9.  This was true even though all Plaintiffs—and those similarly situated to them—are covered by the minimum wage and overtime requirements of the FLSA; none qualified as exempt based on their duties or their salary.  *See* 29 U.S.C. § 201 *et seq*.

Turnover in these positions was high, in part due to frustration with the substandard wages for the long daily shifts.  *See* Exh. 1, Harris Decl. ¶ 4 (detailing work periods of 6 months

---

[3] Plaintiff Harris received some overtime for periods of time, but these payments were insufficient under the law and do not extinguish his claim. *See* Exh. 1, Harris Decl. ¶ 11. For the reasons discussed *supra* in Section III.B, Ms. Harris's situation is not materially different for purposes of conditional certification. *See, e.g.*, *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 171-72 (D.D.C. 2014); *Castillo v. P & R Enters., Inc.*, 517 F. Supp. 2d 440, 446 (D.D.C. 2007); *Banks v. Wet Dog, Inc.*, No. RDB-13-2294, 2015 WL 433631, at *3 (D. Md. Feb. 2, 2015).

and 10 months); Exh. 2, Frye Decl. ¶ 3 (detailing a work period of 8 months); Exh. 3, Franklin Decl. ¶ 3 (detailing work periods of 2 months and 6 months); Exh. 4, Jackson Decl. ¶ 3 (detailing a work period of 15 months). As such, there are numerous additional drivers who were subjected to the same wage-deprivation practices. *See* Exh. 1, Harris Decl. ¶¶ 15-16; Exh. 2, Frye Decl. ¶¶ 13-14; Exh. 3, Franklin Decl. ¶¶ 14-15; Exh. 4, Jackson Decl. ¶¶ 14-15; Subcontracting Plan, Dkt. 13-1 (showing over 40 subcontractors providing NEMT services under the D.C. Contracts).

### III.   ARGUMENT

#### A.   The Remedial Purposes of the FLSA Favor Allowing Plaintiffs to Pursue their Claims Collectively and Facilitating Notice to Potential Collective Members

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). As such, "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 396-97 (6th Cir. 2017) (explaining that the FLSA "must not be interpreted or applied in a narrow, grudging manner" (internal citations and quotation marks omitted). As relevant to this case, the FLSA requires that covered employers compensate their non-exempt employees at or above a specific minimum-wage rate ($7.25 per hour at all times relevant to this case) for all hours worked and at a rate of one-and-a-half times their hourly rate (or, at minimum, one-and-a-half times the minimum-wage rate) for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206(a)(1)(C) & 207(a)(1).

To effectuate these requirements and the remedial purposes of the statute, the FLSA authorizes collective actions "by any one or more employees for and on behalf of himself or

themselves and other employees similarly situated." *Id.* § 216(b).  Collective actions further the FLSA's remedial purposes by allowing individual employees to pool their resources to enforce their rights and by addressing employees' reasonable fear of reprisal for challenging their employers individually.  *Hoffman-La Roche Inc.*, 493 U.S. at 170.  They also serve the interests of the courts and of all parties by providing an efficient means to resolve in a single proceeding common issues arising out of an unlawful policy or practice.  *See id.*

The remedial benefits inherent in the FLSA cannot be realized if the employees who suffered the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in.  *See id.*  Accordingly, courts have the power to facilitate the issuance of notice of a collective action to potential collective members.  *See id.* at 170-71.  Speed is of the essence in issuing this notice, however, because the statute of limitations continues to run under the FLSA until aggrieved employees affirmatively opt-in to the action.  *See* 29 U.S.C. §§ 216(b) & 256(b); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).  In the absence of timely notice, putative collective members could be deprived of the opportunity to participate until after their claims are substantially diminished or extinguished by the passage of time.  Indeed, for each day that notice is not provided to potential opt-in plaintiffs, employees with valid claims are losing earned wages.  Because the statute of limitations is presently running for these absent collective members, Plaintiffs request a prompt adjudication of their Motion for Conditional Certification and timely issuance of notice to all potential collective members.

  B. <u>Plaintiffs Have Met Their "Modest" Burden of Demonstrating that Plaintiffs and Putative Collective Members are "Similarly Situated" to Support Conditional Certification and Notice</u>

Collective actions are not subject to the requirements generally associated with class actions in Federal Rule of Civil Procedure 23, including numerosity, commonality, and typicality.  *See Hunter v. Sprint Corp.*, 346 F. Supp. 2d, 113, 117 (D.D.C. 2004).  Instead, "a

collective action has only two threshold requirements: the plaintiff[s] must show that [they are] similarly situated to the other members of the proposed class, and those other members must opt in to the proposed class," as facilitated through the Court's issuance of notice. *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013); *see also* 29 U.S.C. §§ 216(b) & 256(b) (noting that the statute of limitations on each individual's claim continues to run until he or she opts in to the lawsuit).

The "similarly situated" inquiry asks the named plaintiffs to simply "present some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Rivera*, 172 F. Supp. 3d at 325 (internal citations and quotation marks omitted). This burden is not heavy. *See, e.g., id.* (describing a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" and "not particularly stringent, fairly lenient, flexible, not heavy" (internal citations and quotation marks omitted)); *see also Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 22-23 (D.D.C. 2016) ("it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist"). "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative [collective] members." *Grayson*, 79 F.3d at 1096 (internal citations and quotation marks omitted); *see also Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 6-7 (D.D.C. 2010) (conditionally certifying a collective after finding that similarities in putative collective members' missing overtime claims were "sufficient to overcome any differences in job titles or work locations between the plaintiffs and putative [collective] members").

The conditional certification determination regularly occurs prior to discovery, in order to

avoid statute-of-limitations issues, *see* 29 U.S.C. § 256(b), and to further promote the remedial purposes of the FLSA. *See Hoffman-La Roche*, 493 U.S. at 170. As such, Plaintiffs may satisfy their "similarly situated" burden through affidavits and pleadings (which must be taken as true, *see Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 169 (D.D.C. 2014)). *See McKinney v. United Stor-All Ctrs., Inc.*, 585 F. Supp. 2d 6, 9 (D.D.C. 2008) (granting conditional certification largely based on only the pleadings and two affidavits from the named plaintiff and a putative collective member); *see also Encinas*, 265 F.R.D. at 6-7 (relying on declarations from three named plaintiffs to conditionally certify the collective). Courts should refrain from resolving factual disputes or other merits issues at this stage in the proceedings. *See Rivera*, 172 F. Supp. 3d at 325-26.

Plaintiffs and the putative collective members are similarly situated with respect to their job duties and wage payments they received that give rise to their legal claims.[4] *See, e.g.*, *Rivera*, 172 F. Supp. 3d at 325; *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("The primary focus in this inquiry is whether the potential plaintiffs are similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." (internal citations and quotation marks omitted)). The Named Plaintiffs and a putative opt-in plaintiff have presented sworn declarations attesting that they were employed by MTM as NEMT drivers, performed the same work duties, and were paid a weekly or hourly rate that did not account for the full minimum and overtime rates to which they were entitled. *See* Exh. 1, Harris Decl. ¶¶ 1-3, 10-11, 14; Exh. 2, Frye Decl. ¶¶ 1-2, 9, 12; Exh. 3, Franklin Decl. ¶ 1-2, 9-11; Exh. 4, Jackson Decl. ¶¶ 1-2, 6-9. In other words, the declarations all describe the same routine practices: the

---

[4] Plaintiffs can show that they are similarly situated based on a common practice, even without an explicitly stated policy. *See Marroquin v. Canales*, 236 F.R.D. 257, 260-61 (D. Md. 2006)).

8

drivers' regular hourly rate[5] generally did not meet federal minimum-wage requirements ($7.25 per hour), they were rarely (if ever) paid at the required time-and-a-half rate for hours worked in excess of 40 each week, and MTM did not respond to complaints about low wages.  *See* Exh. 1, Harris Decl. ¶¶ 10-11, 14; Exh. 2, Frye Decl. ¶¶ 9, 12; Exh. 3, Franklin Decl. ¶ 9-11; Exh. 4, Jackson Decl. ¶¶ 9, 13.  And Plaintiffs have further alleged that this common practice originated with MTM and that MTM was responsible for but failed to ensure that each driver was paid in compliance with the law.  *See* Compl., Dkt. 1, ¶¶ 1-3, 25, 27, 39-41, 91, 93-97, 100, 102, 103-05. Plaintiffs have therefore demonstrated that they are similarly situated with respect to the issue of whether MTM failed to pay legally mandated wages under the FLSA.

The Named Plaintiffs have also presented evidence of other workers who were employed by MTM and who were subject to the same unlawful treatment Plaintiffs suffered.  *See* Exh. 1, Harris Decl. ¶¶ 15-16; Exh. 2, Frye Decl. ¶¶ 13-14; Exh. 3, Franklin Decl. ¶¶ 14-15; *see also* Exh. 4, Jackson Decl. ¶¶ 14-15.  Indeed, one of those individuals has submitted a declaration in support of Plaintiffs' conditional certification request.  *See generally* Exh. 4, Jackson Decl.  This declaration further supports Plaintiffs' substantive allegations, as well as their allegations that additional similarly situated individuals exist.

Because Plaintiffs have satisfied their modest burden of demonstrating that they and other putative collective members are similarly situated, this Court should conditionally certify the claims of the following individuals:

> All individuals who worked under the non-emergency medical transportation (NEMT) contracts between Medical Transportation Management, Inc. and the District of Columbia (the D.C. Contracts) at any time during the period from July 13, 2014 to the present who performed driving services under the contracts.

---

[5] The regular hourly rate is calculated by dividing total weekly compensation by the total hours worked per week.  *See* 29 C.F.R. § 778.109.

C.     MTM's Challenge to Its Status as an Employer Need Not Delay a Decision on Plaintiffs' Motion for Conditional Certification

Pending before this Court is MTM's Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6), which argues in part that MTM is not Plaintiffs' employer under the FLSA. *See* Dkt. 10. As explained in detail in Plaintiffs' brief in opposition, Plaintiffs have alleged sufficient facts to establish MTM as their employer under the Rule 12(b)(6) standard. *See* Dkt. 13 at 4-22. The Court need not adjudicate this issue to resolve Plaintiffs' Motion for Conditional Certification and should instead reserve its substantive determination for a later stage of the proceeding on a more complete record.

As an initial matter, whether MTM is properly considered a joint employer does not undermine Plaintiffs' arguments that they and the putative collective members are similarly situated with respect to the core of their factual and legal claims: all drivers allege that they work long hours and are not properly compensated pursuant to federal law for their work under the D.C. Contracts. *See* Compl., Dkt. 1, ¶¶ 43, 45-48. Plaintiffs therefore urge this Court to adjudicate their Motion for Conditional Certification without delay.

Other courts within this circuit have also properly rejected defendants' challenges to employer status at the conditional certification stage and have reserved such merits issues for the close of discovery. *See, e.g.*, *Rivera*, 172 F. Supp. 3d at 327. In *Rivera*, for example, the named plaintiffs sought conditional certification of a collective seeking minimum and overtime wages from a subcontractor on a construction project, whom they alleged was their employer along with a sub-subcontractor that was no longer a party to the lawsuit. 172 F. Supp. 3d at 323. The court held that the plaintiffs had "satisfied their modest burden [for conditional certification] by alleging that both they and the putative plaintiffs worked for [the subcontractor] on the Project and were undercompensated in violation of the FLSA." *See id.* at 326.

The court further rejected the subcontractor's argument that the plaintiffs could not meet the "similarly situated" standard because the subcontractor[6] was not the "employer-in-fact" to either the named plaintiffs or the putative collective members. *Id.* at 327. The court noted that "courts have reserved consideration of whether separate employers are joint employers for a final, stage two [decertification] determination." *Id.* (internal citations and quotation marks omitted). But the court nonetheless determined that the named plaintiffs had sufficiently alleged—through their complaint and declarations—the subcontractor's employer status because the subcontractor directed the plaintiffs' work, required that hours be recorded on timesheets bearing the subcontractor's name, provided materials for the plaintiffs' work, and used the sub-subcontractors simply as "pass throughs" for the workers and their wages. *Id.* at 327. In addition, it noted that "it would be reasonable to conclude that [the company] may also have engaged in these same practices with other subcontractors" if the "Defendants' pay records and agreements to subcontract . . . reveal . . . a common plan existed to improperly pay overtime salaries." *Id.* (internal citations and quotation marks omitted).

*Rivera* is substantially similar to the present case. MTM's status as an employer is a fact-based dispute that looks at the day-to-day interactions between MTM and its subcontractors. Such a decision cannot be made at the conditional certification stage and should be stayed until a later stage of the proceedings. To the extent the Court considers the issue, Plaintiffs have alleged that MTM played a controlling role in their hiring, discipline, and termination; in the training they received; in the day-to-day obligations, standards, and "materials" (daily schedules and passengers) for their jobs; and in paying or ensuring that they were paid wages in accordance with the law. *See, e.g.*, Compl., Dkt. 1, ¶¶ 25, 28-29, 31-40, 95-97; Exh. 1, Harris Decl. ¶ 5;

---

[6] Rivera involved a subcontractor and sub-subcontractors; although the titles are different, this is substantively the same scenario the general contractor-subcontractor relationships here.

Exh. 2, Frye Decl. ¶ 4; Exh. 3, Franklin Decl. ¶ 4; *see also* Exh. 4, Jackson Decl. ¶¶ 4, 6-7, 12. For the same reasons that MTM's Motion to Dismiss should be denied, Plaintiffs have sufficiently alleged facts supporting MTM being their employer for conditional certification purposes. *See* Pls' Resp. to Mot. to Dismiss, Dkt. 13, at 4-22;[7] *see also Rivera*, 172 F. Supp. 3d 325-27. On similar facts, the *Rivera* court concluded that "the Named Plaintiffs and the putative plaintiffs are similarly situated with respect to [the company's] alleged policies so as to justify conditional certification and notice to the putative plaintiffs." *Rivera*, 172 F. Supp. 3d at 328. The same conclusion should result here.

Should the Court believe that it needs to adjudicate MTM's Motion to Dismiss as part of or prior to adjudicating Plaintiffs' Motion for Conditional Certification, Plaintiffs respectfully request that this Court toll the statute of limitations for the putative collective members' claims. *See* Pls' Mot. to Toll, Dkt. 15. Tolling is critical here to avoid these individuals' claims from being substantively diminished or extinguished altogether while this request is pending before the Court. *See, e.g.*, *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988) (discussing the importance of promptly adjudicating requests for conditional certification). As Plaintiffs demonstrate in their contemporaneously filed Motion to Toll, which they incorporate here by reference, Plaintiffs have diligently pursued their rights and their request to proceed collectively, and the putative collective members should not be forced to lose out on portions of their claims simply due to the requirements of the Court's docket. *See* Pls' Mot. to Toll, Dkt. 15, at 3-4. Moreover, MTM cannot complain of any prejudice from tolling as any delay in the progression of the case is a result of MTM's own motion to dismiss. *Id.* at 6. Tolling until both Motions

---

[7] To the extent the Court considers MTM's status as Plaintiffs' employer in resolving Plaintiffs' request for conditional certification, Plaintiffs incorporate by reference the arguments in their Opposition to MTM's Motion to Dismiss.

12

have been decided is therefore appropriate in this case.

Because Plaintiffs have met their burden of demonstrating that they are similarly situated with other putative collective members, *see* Section III.B, and because MTM's Motion to Dismiss should not delay this Court's adjudication of the present Motion, this Court should grant Plaintiffs' Motion for Conditional Certification and direct the issuance of Notice promptly. In the alternative, the Court should at least toll the statute of limitations for putative collective members until the resolution of the pending motions.

>    D.   Plaintiffs' Proposed Notice Provides the Information Necessary to Make an Informed Decision about Opting in to the Case, and the Court Should Direct the Issuance of this Notice to Potential Collective Members

Plaintiffs request that the Court approve their proposed Notice to potential collective members, attached as Exhibit 6 to this Motion. Plaintiffs' proposal "provide[s] accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574-75 (D. Md. 2012) (internal quotation, alteration marks and citation omitted). It describes the nature of Plaintiffs' claims, clarifies that liability has not yet been decided and that the results of the suit are not guaranteed, explains how to opt-in to the action, and provides assurance that it is unlawful for employers to retaliate against those who participate. The Notice further advises potential opt-ins that they must return to Plaintiffs' counsel their signed consent forms, postmarked within 90 days after the date on which the Notice and Opt-In Consent Forms are mailed. *See, e.g.*, *id.* at 575 ("numerous courts around the country have authorized ninety day opt-in periods for collective actions"). Plaintiffs' counsel will file the Opt-In Consent Forms with the Court on an ongoing basis as they are received.

To accomplish effective and timely distribution of the notice, Plaintiffs further request an Order requiring MTM to provide, within 14 days of a favorable ruling on this Motion, a

computer-readable database of names, last known addresses, dates of employment, dates of birth, telephone number(s), and e-mail addresses for all current and former NEMT drivers who have worked for MTM and/or worked under MTM's contract with the District of Columbia since July 13, 2014, three years prior to the date this action was filed.[8]  *See, e.g.*, *Blount*, 945 F. Supp. 2d at 97 ("Courts routinely order the production of names and addresses in collective actions"); *Ayala*, 12 F. Supp. 3d at 172 (directing the production of telephone numbers because "many potential plaintiffs do not speak English as a first language—thus making them harder to contact"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (ordering defendant to provide "a computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers . . . . within three years from the filing of the complaint").  This Order should further permit Plaintiffs to disseminate the Notice via first-class mail and email to individuals on the list produced by MTM.

Plaintiffs are not at this time seeking social security numbers for all of the putative collective members.  However, the jobs at issue in this case are subject to high turn-over, *see e.g.*, Exh. 1, Harris Decl. ¶ 4 (detailing work periods of 6 months and 10 months); Exh. 2, Frye Decl. ¶ 3 (detailing a work period of 8 months); Exh. 3, Franklin Decl. ¶ 3 (detailing work periods of 2 months and 6 months); Exh. 4, Jackson Decl. ¶ 3 (detailing a work period of 15 months), and individuals who worked in these positions as long as three years ago may be

---

[8] Courts within this district have authorized sending Notice to individuals who fall within the collective for a period of three years prior to the filing of the complaint, rather than three years prior to when the Notice is sent: "Because the date on which the notices will be distributed is uncertain, it makes administrative sense to set a firm date for the notice period, and three years prior to the filing of the Complaint . . . is an appropriate date." *Castillo*, 517 F. Supp. 2d at 449.

difficult to locate.  Plaintiffs therefore request that the Court order MTM to produce social security numbers to Plaintiffs for all individuals without current mailing addresses or for whom consent forms are returned undeliverable, to permit Plaintiffs to conduct further skip-tracing for these individuals.[9]  *See, e.g.*, *Santiago v. Tequila Gastropub LLC*, No. 16-CV-7499 (JMF), 2017 WL 1283890, at *2 (S.D.N.Y. Apr. 5, 2017); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 129-30 (S.D.N.Y. 2014).

Plaintiffs also seek an Order requiring MTM to publicize the Court-approved Notice in the following ways:  (1) post the Notice at MTM's offices, in an area accessible and visible to drivers who come into the office; (2) direct its subcontractors to post the Notice in each of their offices in an area accessible and visible to NEMT drivers; and (3) direct and/or require that the Notice be posted in all vehicles used to transport patients under the D.C. Contracts, including those owned and operated by subcontractors or entities other than MTM.  *See, e.g.*, *Encinas*, 265 F.R.D. at 11 (D.D.C. 2010) (granting the request to post notice at all of defendant's work places and job sites); *Hamadou*, 915 F. Supp. 2d at 669 ("Courts routinely approve requests to post notice . . . on employee bulletin boards and in other common areas, even where potential [collective] members will also be notified by mail." (internal citation and quotation marks omitted)).

Plaintiffs' proposed Notice clearly communicates the information that putative plaintiffs need to make an informed choice about opting in to this lawsuit.  The information Plaintiffs seek and the posting they request are necessary to ensure that Notice reaches the maximum number of putative collective members, and these requests are narrowly tailored to serve this purpose.  The

---

[9] To the extent that this request raises confidentiality concerns, Plaintiffs are willing to enter into a protective order with MTM that must be decided and filed with the Court within 15 days of the request for social security numbers.

15

Court should therefore approve Plaintiffs proposed Notice and enter an Order directing MTM to produce the information Plaintiffs request and post the Notice in the locations specified above.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and issuance of notice should be granted.

Dated:  October 2, 2017

Respectfully submitted,

*/s/ Miriam R. Nemeth*
Joseph M. Sellers (#318410)
Miriam R. Nemeth (#1028529)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C. 20005
Telephone:  (202) 408-4600
jsellers@cohenmilstein.com
mnemeth@cohenmilstein.com

Michael T. Kirkpatrick (#486293)
Patrick D. Llewellyn (#1033296)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
Telephone: (202) 588-1000
mkirkpatrick@citizen.org
pllewellyn@citizen.org

*Attorneys for Plaintiffs*