**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ISAAC HARRIS, et al. | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:17-cv-01371-APM |
| MEDICAL TRANSPORTATION | ) |
| MANAGEMENT, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**CERTIFICATION OF CLAIMS PURSUANT TO RULE 23(c)(4) AND**
**CLARIFICATION THAT THE LIMITATIONS PERIOD REMAINS TOLLED**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 1

III.   ARGUMENT ................................................................................................. 4

    A.    Courts have discretion to certify common issues regardless of whether common issues predominate in the case as a whole. ............................... 4

    B.    Certification of particular issues in this case would advance its resolution. .......... 8

        Issues 1 and 2: Whether MTM is a joint employer and whether it is a general contractor ......................................................................................... 9

        Issue 3: Whether the time expended traveling between trips and waiting for clients is compensable ........................................................................ 13

        Issue 4: Whether the wage rates set by the Living Wage Act and the Service Contract Act apply to time worked on MTM's managed-care contracts ........................................................................................... 15

    C.    The Court should clarify that the statute of limitations for putative class members' claims continue to be tolled while the court considers supplemental briefing on plaintiffs' motion for certification under Rule 23(c)(4). .................................................................................................... 17

CASES

*In re Allstate Ins. Co.*,
  400 F.3d 505 (7th Cir. 2005) ...................................................................................6

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)..........................................................................................17, 18

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ...............................................................................................17

*Barryman-Turner v. District of Columbia*,
  115 F. Supp. 3d 126 (D.D.C. 2015) .......................................................................17

*Bonnette v. California Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) .................................................................................9

*Bridges v. Dep't of Md. State Police*,
  441 F.3d 197 (4th Cir. 2006) .................................................................................19

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .....................................................................................5

*Chung v. U.S. Dep't of Justice*,
  333 F.3d 273 (D.C. Cir. 2003) ...............................................................................20

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983)..........................................................................................17, 18

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ...................................................................................6

*Dinkel v. MedStar Health Inc.*,
  No. CV 11-998(CKK), 2015 WL 5168006 (D.D.C. Sept. 1, 2015) .......................13

*Dyson v. District of Columbia*,
  710 F.3d 415 (D.C. Cir. 2013) ...............................................................................20

*Gates v. Rohm & Haas Co.*,
  655 F.3d 255 (3d Cir. 2011)......................................................................................7

*Gonzalez v. Corning*,
  885 F.3d 186 (3d Cir. 2018)......................................................................................7

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ....................................................................................7

*In re Johnson*,
  760 F.3d 66 (D.C. Cir. 2014) ........................................................................4, 5, 8, 9

*Martin v. Behr Dayton Thermal Prods. LLC,
    896 F.3d 405 (6th Cir. 2018) ................................................................6, 8

*In re Nassau Cnty. Strip Search Cases,
    461 F.3d 219 (2d Cir. 2006) .................................................................6, 8

Perrow v. District of Columbia,
    435 F. Supp. 3d 9 (D.D.C. 2020) ............................................................18

Salinas v. Commercial Interiors, Inc,
    848 F.3d 125 (4th Cir. 2017) ...................................................................9

Sawyer v. Atlas Heating & Sheet Metal Works, Inc.,
    642 F.3d 560 (7th Cir. 2011) ..................................................................18

*Scott v. District of Columbia,
    87 F. Supp. 3d 291 (D.D.C. 2015) ......................................................18, 19

In re St. Jude Med., Inc.,
    522 F.3d 836 (8th Cir. 2008) ...................................................................7

Steering Comm. v. Exxon Mobil Corp.,
    461 F.3d 598 (5th Cir. 2006) ...................................................................6

Tardiff v. Knox Cnty.,
    365 F.3d 1 (1st Cir. 2004) .......................................................................7

Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,
    321 U.S. 590 (1944) .............................................................................13

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227 (9th Cir. 1996) ...................................................................6

STATUTES

D.C. Living Wage Act, D.C. Code §§ 2-220.01, et seq. .....................................2

D.C. Minimum Wage Act, D.C. Code §§ 32-1001, et seq. ...............................2, 13

D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1302, et seq. ..............15

Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. .......................................3

Service Contract Act, 41 U.S.C. § 6701 .......................................................2

OTHER AUTHORITIES

Fed. R. Civ. P. 23 1, 3, 4, 5Jenna G. Farleigh, Note, Splitting the Baby: Standardizing Issue Class
    Certification, 64 Vand. L. Rev. 1585 (2011) ..............................................5

## I.      INTRODUCTION

This Supplemental Memorandum in support of Plaintiffs' Motion for Class Certification, ECF No. 134, provides additional support for plaintiffs' original request to certify their claims pursuant to Federal Rule of Civil Procedure 23(c)(4), in order that issues common to members of the proposed class may be adjudicated together.  In its Memorandum Opinion and Order denying Plaintiffs' Motion for Class Certification, the Court denied with prejudice the request for certification of all claims pursuant to Rule 23(b)(3) but denied without prejudice the request for certification under Rule 23(c)(4) of common issues for members of the proposed class.  This supplemental memorandum provides additional support for Plaintiffs' request for certification pursuant to Rule 23(c)(4).

In this memorandum, Plaintiffs request clarification that the statute of limitations for putative class members' claims remain tolled while the Court considers supplemental briefing on Plaintiffs' motion for certification under Rule 23(c)(4).  In the alternative, Plaintiffs request that the Court exercise its discretion to equitably toll the statute of limitations for putative class members from the date of the Court's Order denying without prejudice Plaintiffs' motion for certification under Rule 23(c)(4), until the date on which the Court rules on this renewed request for certification under Rule 23(c)(4).

## II.      FACTUAL BACKGROUND

Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin are current and former drivers who provide non-emergency medical transportation ("NEMT") services to clients of defendant MTM. Pursuant to contracts with the District of Columbia, MTM has committed to provide NEMT services to D.C. residents covered by Medicaid.  MTM provides the same NEMT services to

D.C. residents who receive health care through private managed-care companies.[1]  Pls. Mot. Class Cert. Ex. 4, Excerpts from Award/Contract between the Department of Healthcare Finance and MTM at MTM 000002–03, ECF No. 130-6 (hereinafter "Pls. Ex. 4");[2] Pls. Mot. Class Cert. Ex. 3, Medical Transportation Services Agreement between MTM and Medstar at MTM 003597, ECF Nos. 131-5–7 (hereinafter "Pls. Ex. 3").  MTM also entered into Service Agreements with subcontractors whose drivers provide the transportation services required by both the D.C. NEMT Contract and the managed-care contracts.  *See generally* Pls. Mot. Class Cert. Ex. 5, Medical Transportation Services Agreement between MTM and Star Transportation, ECF No. 130-7 (hereinafter "Pls. Ex. 5"); Pls. Ex. 2, Moses II Dep. at 56:14-57:6; Pls. Mot. Class Cert. Ex. 6, MTM Resp. to Plaintiffs' Second Requests for Production, No. 13, ECF No. 130-8 (hereinafter "Pls. Ex. 6") ("[S]ee contracts between MTM and transportation providers that were previously produced by MTM; there are no separate contracts between MTM and the transportation providers with respect to managed care organizations.").

Plaintiffs allege that they, and other similarly situated drivers, were paid for their NEMT services less than the legally required minimum and overtime wages under the D.C. Minimum Wage Act, D.C. Code §§ 32-1001, *et seq.*, the D.C. Living Wage Act, D.C. Code §§ 2-220.01, *et seq.*, and the prevailing wage set by the Service Contract Act, 41 U.S.C. § 6701, D.C. Code § 32-1302 (requiring the timely payment of promised remuneration presumed to be, at a minimum, the

---

[1] MTM also provides to the District of Columbia transportation for children with disabilities to their schools, a service that MTM provides on an as-needed basis and that makes up a very small percentage of MTM's work in D.C., less than 10% of trips.  *See* Pls. Mot. Class Cert. Ex. 1, Award/Contract between the Superintendent of Education and MTM at 1, 5, ECF No. 130-3; Pls. Mot. Class Cert. Ex. 2, Excerpts from the 30(b)(6) Dep. of Michelle Moses, Mar. 14, 2019 at 65:4–9, ECF No. 130-4 (hereinafter, "Pls. Ex. 2, Moses II Dep.").

[2] As this memorandum supplements Plaintiffs' original Motion for Class Certification, it adopts the same exhibit designations as were used in the original motion.

prevailing wage rate set by federal law).[3]  While the drivers work directly for subcontractors to provide the NEMT services, Plaintiffs allege that they are also jointly employed by MTM and that MTM is the general contractor for the subcontractors.  MTM jointly employs the drivers because it controls, or shares responsibility with the subcontractors for setting the essential terms and conditions of the drivers' employment—their working conditions, the circumstances in which they may be hired and fired, and their compensation.  *See* Mem. Op. & Order 3, ECF No. 176 (summarizing Plaintiffs' evidence that MTM sets the terms and conditions of the drivers' employment).

On July 26, 2019, Plaintiffs filed their Motion for Class Certification, ECF No. 134, seeking to certify a class of drivers under Federal Rule of Civil Procedure 23(b)(3), and in the alternative to certify an "issue class" of the same drivers under Rule 23(c)(4) to resolve the issues common to all class members and advance the litigation efficiently.  Plaintiffs sought certification of a class comprising all "[d]rivers who have provided transportation service to MTM clients in the District of Columbia under any contract with the District of Columbia at any time from three years prior to the filing of this action through the date on which notice is issued affording the right to opt out of any class certified pursuant to Rule 23(b)(3)."  Pls. Mem. in Supp. Class Cert. 17, ECF No. 134.

On September 24, 2020, the Court denied Plaintiffs' request to certify their claims under Rule 23(b)(3) but denied without prejudice the request to certify their claims under Rule 23(c)(4).  Mem. Op. & Order 2, 28, ECF No. 176.  The Court allowed Plaintiffs to provide

---

[3] In addition, Plaintiffs assert minimum wage and overtime claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* The court has conditionally certified the collective action for these claims.  *See generally* Order, ECF No. 48.  Because the FLSA claims are not subject to this motion for class certification, Plaintiffs do not address them here.

supplemental briefing in support of Rule 23(c)(4) certification.  *Id.*  In its ruling, the Court held that Plaintiffs' proposed class satisfied the requirements of Rule 23(a).  *Id.* at 9–13.  Although the Court held that certification of Plaintiffs' claims was superior to their pursuit individually, it ultimately denied certification because it found that common questions failed to predominate in determining whether the class could prove liability with evidence common to the class.  *Id.* at 25.

Relying on the Court's earlier finding that Plaintiffs' claims have satisfied Rule 23(a), Plaintiffs now seek to certify those issues that can be tried with evidence common to the class pursuant to Rule 23(c)(4).  In so doing, this memorandum incorporates by reference Plaintiffs' prior briefing demonstrating that their claims satisfy Rule 23(a).  Below, Plaintiffs explain that particular issues material to the litigation should be certified pursuant to Rule 23(c)(4).

## III.    ARGUMENT

### A.    Courts have discretion to certify common issues regardless of whether common issues predominate in the case as a whole.

Rule 23(c)(4) allows certification of particular issues where the requirements of Rule 23(a) are met and the issues can be adjudicated with evidence common to the class.  Fed. R. Civ. P. 23(c)(4).  The requirements of Rule 23(b)(3)—that issues common to the class predominate and that class adjudication is the superior method for adjudication of the claims—apply only to those issues that can be proved with evidence common to the class.  *See In re Johnson*, 760 F.3d 66, 74 (D.C. Cir. 2014).

There was at one time debate among some courts about whether certification of a Rule 23(c)(4) class requires a finding that the class's claims as a whole satisfy Rule 23(b)(3)'s requirements that common questions predominate and class adjudication is the superior means of resolving the case, or whether predominance and superiority need be established only with respect to the issues for which certification is requested.  The D.C. Circuit, however, has

4

resolved this debate within this circuit.  District courts within this circuit have broad discretion in determining whether to grant class certification and how to manage and structure those class claims that are certified, including through the use of Rule 23(c)(4) issue classes.  *In re Johnson*, 760 F.3d at 75.  Deferring to the broad discretion with which the district courts are entrusted, *Johnson* held that it was not manifest error to certify specific issues pursuant to Rule 23(c)(4). *Id.* at 74.  Such certification of common issues comports with Rule 23(b)(3)'s predominance requirement because "common issues necessarily predominate" when "only common issues will be handled on a classwide basis."  *Id.* at 74.  Although the Court did not further parse the interplay between the Rule 23(b)(3) predominance requirement and Rule 23(c)(4), the conclusion it reached plainly reflected a judgment that only the issues certified must satisfy the predominance requirement; and if the issues are genuinely common—that is, they can be resolved at one stroke for the class as a whole through common evidence—that requirement is necessarily satisfied.  *Id.* at 74–75.

The Court then canvassed rulings on this subject from other circuits, finding that virtually all circuits allow for the Rule 23(c)(4) certification as to common issues even when other aspects of the case would not satisfy the predominance requirement.  When *Johnson* was decided, "the First, Second, Third, Fourth, Seventh, and Ninth Circuits ha[d] held an issue class can be used to avoid a predominance problem whereas the Fifth Circuit ha[d] held the cause of action as a whole must pass the predominance test."  *Id.* (citing Jenna G. Farleigh, Note, *Splitting the Baby: Standardizing Issue Class Certification*, 64 Vand. L. Rev. 1585 (2011)); *see Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) (stating, in a footnote, that Rule 23(c)(4) is merely "a housekeeping rule that allows courts to sever the common issues for a class trial"). Even the Fifth Circuit itself more recently seemed to take a different view than the *Castano*

footnote, as it endorsed use of multi-phased trials in which issues common to a certified class were set for trial separately from individual issues. *See In re Deepwater Horizon*, 739 F.3d 790, 806, 816 (5th Cir. 2014); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (explaining that a manageable trial plan in which class-wide liability issues were bifurcated from individual issues may circumvent predominance problems).

Furthermore, since *Johnson*, every court of appeals to address this issue has agreed that certification of particular issues pursuant to Rule 23(c)(4) is an alternative to requiring that the entirety of an action satisfy the predominance requirement of Rule 23(b)(3). In *In re Nassau County Strip Search Cases*, for example, the Second Circuit held that Rule 23(c)(4) authorizes courts to certify issues common to the class where the balance of the case may not meet the predominance requirement. 461 F.3d 219, 226 (2d Cir. 2006). There, the court reasoned that the plain language of the statute and the Advisory Committee Notes support this interpretation and that the *Castano* footnote would render Rule 23(c)(4) a nullity and contravene established principles of statutory interpretation. *Id.* Other courts of appeals have endorsed the same interpretation of Rule 23(c)(4). *See Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 412 (6th Cir. 2018), (adopting the "broad view" of Rule 23(c)(4) certification in which the court may certify issues before applying the predominance and superiority requirements), *cert. denied*, 139 S. Ct. 1319 (2019); *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (holding that Rule 23(c)(4) permitted a single hearing to determine whether the defendant had a particular policy followed by individual hearings to determine whether that policy applied to each class member and explaining that this procedure was more efficient than litigating the first issue in more than a thousand separate lawsuits); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (explaining that Rule 23(c)(4) allows issue certification where predominance is

not met as to the entire action, but finding that the district court failed to consider whether predominance was satisfied as to the common issues certified under Rule 23(c)(4)); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438–45 (4th Cir. 2003) (rejecting the dissent's argument that the case must first satisfy the predominance standard before an issue class can be certified, but finding that the case as a whole met the predominance standard); *Tardiff v. Knox Cnty.*, 365 F.3d 1, 6–7 (1st Cir. 2004) (upholding the class certification on liability issues where individual damages issues remained because it "would be a legitimate function" "[i]f the class action resolved liability even as to some further narrowed class").

Similarly, the Third Circuit and Eighth Circuits have adopted approaches to Rule 23(c)(4) that allow issue certification where the predominance requirement is not satisfied as to the case as a whole.  Like the D.C., Second, Fourth, Sixth, Seventh, and Ninth Circuits, the Third Circuit recognizes that "the appropriateness of certifying a Rule 23(c)(4) class is analytically independent from the predominance inquiry under Rule 23(b)(3)."  *Gonzalez v. Corning*, 885 F.3d 186, 202 (3d Cir. 2018).  *See also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (listing factors and contemplating that partial certification may appropriately advance the litigation where it is more efficient than procedural alternatives).  The Eighth Circuit adopted a similar approach to certification of issue classes when it reversed the certification of subclasses where the issues amenable to class treatment "would do little to increase the efficiency of the litigation."  *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008).  Like the other circuits, the Third and Eighth Circuits considered whether the issues submitted for class treatment were "amenable to class-wide resolution" that would advance the resolution of the action independently from whether the entire case satisfied the predominance requirement of Rule 23(b)(3).  *See id.*; *Gates*, 655 F.3d at 273.

Thus, the nearly unanimous consensus of the courts of appeals is that district courts have the discretion to certify particular issues common to the class regardless of whether common issues predominate in the case as a whole.  Under precedents including the D.C. Circuit's decision in *Johnson*, district courts considering certification of issue classes should first identify the issues that may be appropriate for certification and then determine *for those issues alone* whether the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  *E.g., In re Johnson*, 760 F.3d at 74; *In re Nassau,* 461 F.3d at 226.

**B.** **Certification of particular issues in this case would advance its resolution.**

Plaintiffs have presented several issues that are common to all class members and as to which the proof and defense can be resolved for the class as a whole.  Because resolution of these issues on a class-wide basis will advance the resolution of this action, these issues can and should be certified pursuant to Rule 23(c)(4).  *See Martin*, 896 F.3d at 415–16 (6th Cir. 2018) (affirming Rule 23(c)(4) certification of issues that could be resolved with common proof, even though they would not fully resolve the defendant's liability, where they would materially advance the litigation).

Plaintiffs seek certification for the following issues:

1.  Whether MTM qualifies as a joint employer of the putative class members;

2.  Whether MTM is a general contractor that is strictly liable for any violations of the wage laws committed by its subcontractors;

3.  Whether the time expended by putative class members traveling between trips provided to MTM clients and waiting for MTM clients qualifies as compensable work under the laws invoked by this action; and

4.  Whether the wage rates set by the Living Wage Act and the Service Contract Act apply to time worked on MTM's managed-care contracts.

Each of these issues either presents questions of law common to the class or questions of fact the resolution of which will rely on evidence common to the class.  In resolving these issues on a class basis, the issues will necessarily predominate over any individual issues because only these issues will be determined on a class basis.  This Court has ample discretion to manage the litigation in this way.  *See In re Johnson*, 760 F.3d at 74 (holding that the district court had discretion to certify issue class because "only common issues will be handled on a class-wide basis, so common issues necessarily predominate").  Moreover, although this Court denied class certification because, it found, the predominance requirement of Rule 23(b)(3) is not met, it at the same time found that class treatment of the case as a whole is "superior" to individual litigation.  Mem. Op. & Order 13–15, ECF No. 176.

> Issues 1 and 2: Whether MTM is a joint employer and whether it is a general contractor

The Court has already recognized that the issues whether MTM is a joint employer and whether it is a general contractor are of central importance to the litigation and their adjudication would substantially advance the resolution of this action.  As the Court observed:

> If MTM is neither a joint employer nor a general contractor, that would bring an end to the case—it cannot be held liable under District of Columbia law for underpayment of wages. On the other hand, if MTM does qualify as a joint employer or a general contractor, that legal conclusion would answer a threshold question in Plaintiffs' favor that is necessary to make out their claims.

Mem. Op. & Order 11, ECF No. 176.  Plaintiffs have advanced two different legal standards for determining whether MTM qualifies as a joint employer.  Pls. Mem. in Supp. Class Cert. 19–23, ECF No. 134 (arguing that MTM is a joint employer under the factors outlined in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), and those outlined in *Salinas v. Commercial Interiors, Inc*, 848 F.3d 125, 139–40 (4th Cir. 2017)).

As Plaintiffs demonstrate in their Motion for Class Certification, the evidence that Plaintiffs will provide to satisfy either of the standards used to determine joint employer status will be common to the proposed class.  Pls. Mem. in Supp. Class Cert. 19–23, ECF No. 134. First, MTM's service agreements and corporate testimony will show that MTM and each of its subcontractors, at the very least, share responsibility for the essential conditions of the drivers' employment.  *Id.* at 21–22; Pls. Ex. 5 at MTM 000917-921; Pls. Mot. Class Cert. Ex. 7, Excerpts from the 30(b)(6) Dep. of Michelle Moses, Dec. 20, 2018 at 74:17-20, 75:18-77:13, 80:21-81:7, 82:11-22, 83:1-5, 84:13-85:6, 86:1-18, ECF No. 131-8 (hiring) (hereinafter "Pls. Ex. 7, Moses I Dep."); *id.* at 83:6-88:13, 171:22-13, 186:10-187:11, 188:14-17 (training); *id.* at 108:10-109:4, 110:14-17, 119:7-9, 119:20-120:3 (rules and standards); *id.* at 132:14-22 (removal from service). Other MTM policies and training manuals, all of which will be presented on behalf of the entire class, confirm MTM's extensive oversight of these conditions of employment. Pls. Mot. Class Cert. Ex. 69, Transportation Provider Handbook at MTM 000829-831, ECF No. 131-19 (describing MTM's oversight of the drivers' credentials) (hereinafter "Pls. Ex. 69"); Pls. Mot. Class Cert. Ex. 55, Medical Transportation Services Agreement Appendix B, ECF No. 130-57; Pls. Mot. Class Cert. Ex. 56, Driver/Attendant Training Course: Ethics & Professionalism at MTM 000531-535, ECF No. 131-13; Pls. Mot. Class Cert. Ex. 57, Assisting Passengers with Disabilities and Emergency Situation Training Course, ECF No. 131-14 (hereinafter "Pls. Ex. 57"); Pls. Mot. Class Cert. Ex. 58, Sexual Harassment ECF No. 131-15; Pls. Mot. Class Cert. Ex. 72, Understanding Cultural Competency, ECF No. 131-22; Pls. Mot. Class Cert. Ex. 60, Corporate Procedure: Field Liaisons, ECF No. 131-16 (hereinafter "Pls. Ex. 60"); Pls. Mot. Class Cert. Ex. 61, Corporate Procedure: Vehicle Surveillance, ECF No. 131-17 (hereinafter "Pls. Ex. 61").

Second, common evidence comprised of MTM's service agreements and other policies show that:

(a)    MTM is indirectly involved in maintaining the drivers' schedules by issuing to the subcontractors the locations and destinations of the clients to which the drivers must travel and the times of those trips, from which the drivers are required to maintain and submit records of their actual travels.  Pls. Ex. 69 at MTM 000834-841.  *See also* Pls. Ex. 7, Moses I Dep. at 148:13-149:4 (describing the process that MTM uses to assign trips); Pls. Ex. 2, Moses II Dep. at 97:16-98:1 (describing the factors that MTM considers when assigning trip to the subcontractors).

(b)    MTM dictates standards of driver performance and appearance, which will be shown with evidence common to the class, that it enforces through inspections of the drivers in the field, on-site visits to the subcontractors' offices, and through MTM-controlled complaint and reporting procedures.  Pls. Ex. 5 at MTM 000916; Pls. Ex. 60 (inspections and monitoring of the drivers pick up and drop off activity, passenger assistance, vehicles, attire, identification, and trip documentation); Pls. Mot. Class Cert. Ex. 51, Corporate Policy: Transportation Provider On-Site Visits at MTM 000807-808 (on-site visits), ECF No. 131-9; Pls. Ex. 57 at MTM 000418, 423 (incident reports).  *See also* Pls. Ex. 7, Moses I Dep. at 112:10-12, 113:19-117:20, 135:11-137:20 (confirming that MTM engages in random inspections and on-site visits) and 70:7-20, 113:11-18, 119:2-5, 127:5-10 (describing methods by which complaints against drivers may be lodged with MTM and how MTM may respond); Pls. Ex. 2, Moses II Dep. at 48:10-21 (same).

(c)    The drivers are economically dependent on MTM because their compensation comes from payments MTM makes to the subcontractors for the NEMT services that the drivers provide to MTM clients.  *See* Pls. Mot. Class Cert. Ex. 63, Standard D.C. Medicaid Trip Rate,

11

ECF No. 131-18; Pls. Ex. 7, Moses I Dep. at 164:12-165:3.  MTM has a long history of

controlling NEMT services in D.C. and has direct relationships with D.C. and the managed-care

companies, which the subcontractors, and therefore the drivers, rely on for trips.  *See* Pls. Mot.

Class Cert. Ex. 62, D.C. Department of Healthcare Finance, Inspection of the Non-Emergency

Medical Transportation Program (September 2017) at DHCF000062 n.3, 64-65, ECF No. 130-64

(explaining that MTM was awarded its first contract with the Department of Health when the

NEMT program was first privatized in 2007); Pls. Ex. 4 at MTM 000002; Pls. Ex. 3 at MTM

003597.

In determining whether these issues are appropriate for certification, the Court is not

writing on a blank slate.  In its prior ruling on class certification, the Court found that "MTM's

legal status as joint employer or general contractor thus presents a quintessential 'common

question'" the answers to which are apt to drive the resolution of the litigation.  Mem. Op. &

Order 11, ECF No. 176.  And, in denying MTM's motion to dismiss, the Court concluded from

the complaint allegations and MTM's contracts with the D.C. government that "[MTM] and the

transportation companies comfortably fit within the definitions of general contractor and

subcontractor, respectively."  Mem. Op. & Order 19–21, ECF No. 21.[4]  The evidence acquired in

discovery, which will be presented on behalf of the class as a whole, has confirmed both

conclusions.

---

[4] MTM's contracts with the D.C. government, which MTM introduced as an exhibit to its
Motion to Dismiss, are common to the proposed class. *See* Mem. Op. & Order 19–21, ECF No.
21.

<u>Issue 3: Whether the time expended traveling between trips and waiting for clients
is compensable</u>

Adjudication of the issue whether the time expended traveling between trips and waiting
for clients is compensable can also be achieved with evidence common to the class and will also
advance the resolution of this action for all parties.  In determining whether individual class
members were paid less than the legally required wages, it will be necessary to determine
whether the time expended traveling between trips and waiting for MTM clients qualifies as
compensable work under the applicable wage laws.

This mixture of factual evidence and legal arguments can and will be presented on behalf
of the class as a whole.  *See* Pls. Mem. in Supp. Class Cert. 24–28, ECF No. 134.  The legal
arguments will address what qualifies as compensable work under the D.C. Minimum Wage Act,
which is interpreted consistent with, and in respects relevant here, more expansively than the
FLSA.  *Dinkel v. MedStar Health Inc.*, No. CV 11-998(CKK), 2015 WL 5168006, at *7–8
(D.D.C. Sept. 1, 2015) (describing various ways in which the D.C. Minimum Wage Act
disavows interpretations of the FLSA that rely on the Portal-Portal Act).  As Plaintiffs will argue
at trial, D.C. law defines as compensable time "all employee time—whether it entails exertion or
entails waiting—'controlled or required by the employer and pursued necessarily and primarily
for the benefit of the employer and his business.'"  *Dinkel*, 2015 WL 5168006, at *10 (quoting
*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)); *See also*
D.C. Code § 32-1002(10)(C) (explicitly including travel time and waiting time in its definition of
compensable time).  This argument will be made on behalf of the entire class.

The MTM protocols governing the service the class members provide to MTM clients
are equally applicable to the entire class. MTM requires the drivers to transport its clients to and
from medical appointments.  While MTM makes no provision in the logs it requires to record

time expended between trips, necessarily the drivers must travel between the drop-off of one

client to the pick-up of the next client.  *See* Pls. Ex. 7, Moses I Dep. at 164:12-165:11.  As there

is no dispute that the clients and their destinations are in different locations from each other,

travel between client trips is a necessary feature of the service class members provide.  Pls.

Mem. in Supp. Class Cert. 24–26, ECF No. 134.  Plaintiffs will argue at trial that the time

expended between client trips is compensable and will show with evidence common to the

class—MTM's service agreements and corporate testimony—that these activities qualify as

compensable work because they are expended for the benefit of the employer.  *See* Pls. Ex. 5 at

MTM 000913-14 (describing the NEMT services); Pls. Ex. 69 at MTM 000823 (describing

transportation provider and client responsibilities).

The same is true for time expended waiting for clients. Evidence common to the class

will show that the drivers are required to wait for clients whose arrival or departure may be

delayed beyond the times appointed.  Pls. Ex. 69 at MTM 000932 (describing requirements to

wait for clients), and MTM 000922 (imposing penalties if a driver is late to pick up a client); Pls.

Ex. 2, Moses II Dep. at 88:15-89:11 (acknowledging that MTM did not consider whether the

driver had time to make additional trips between dropping a client off at a dialysis appointment

and picking them up); Pls. Ex. 7, Moses I Dep. at 163:8-17 (explaining that if a driver is on time

but the passenger is 15 minutes late, the driver is not compensated for the 15 minutes of waiting);

Pls. Mot. Class Cert. Ex. 54, Schedule B, Liquidated Damages, ECF No. 131-12 (imposing

penalties if a driver is late to pick up a client).  Thus, this issue is appropriate for certification

pursuant to Rule 23(c)(4).

<u>Issue 4: Whether the wage rates set by the Living Wage Act and the Service
Contract Act apply to time worked on MTM's managed-care contracts</u>

Adjudication of the legal issues whether work performed pursuant to the MTM managed-care contracts is compensable under the Living Wage Act and the Service Contract Act will apply equally to the entire class and materially advance resolution of this action.  The determination of which wage rates apply to the work performed by Plaintiffs must precede a jury's consideration whether any members of the class were paid less than the legally required wage rates.  Plaintiffs will argue that the wage rates set by the Living Wage Act and the Service Contract Act apply to all work performed by the drivers, including work performed pursuant to MTM's managed-care contracts.

For the reasons described in Plaintiffs' Motion for Class Certification, MTM is bound by the wage requirements in the Living Wage Act and the Service Contract Act because it has been awarded large contracts with District of Columbia.[5]  Pls. Mem. in Supp. Class Cert. 26–36, ECF No. 134.  Plaintiffs have argued that the statutory requirements apply wholesale to certain employers and employees—which include MTM and members of the class—without regard to which working hours are attributed to any particular contract.  *Id.* at 26–34.  Further, Plaintiffs have argued that because MTM failed to adequately distinguish between time worked under its contracts with the District of Columbia and its contracts with managed-care companies—for example compensable waiting time, and time driving between trips is not tracked and attributed to any contract—it is required to pay the Living Wage and Service Contract Act wages for all compensable time.  *Id.* at 34–36; Pls. Reply in Supp. Class Cert. at 8–9, 11–12, ECF No. 155-2.

---

[5] Plaintiffs do not assert a separate cause of action under the Service Contract Act, but rather allege that MTM's failure to pay the required prevailing wages under the Service Contract Act is a violation of the D.C. Wage Payment and Collection Law, D.C. Code § 32-1302.

Regardless of how this issue is resolved, the question whether the wage rates required by the Living Wage Act and the Service Contract Act apply to all hours worked can be determined as a matter of law for the putative class.

*     *     *

Certification of the issues identified above would materially advance the resolution of this action. Although ultimate liability for any violations of the prevailing wage and hour laws may require separate determinations for class members, submission of the issues presented for certification either to the Court or to a jury would permit their single adjudication for all class members. Whether MTM qualifies as a joint employer and/or a general contractor, for example, is a question that must be resolved for each member of the proposed class. Whether these issues are presented for summary adjudication to the Court or to a jury, their resolution can and should bind the parties in any ensuing liability and damage proceedings. The same is true for the questions whether travel between client trips and waiting for clients qualify as compensable work under the applicable wage and hour laws. Resolution of these issues, which may present a mixture of legal and factual questions, will significantly simplify the ensuing liability and damages proceedings. Likewise, the determination whether the Living Wage and Service Contract Acts set rates applicable to work performed pursuant to managed-care contracts will resolve an important issue equally applicable to all ensuing damage proceedings.

Upon resolution of these issues proposed for certification pursuant to Rule 23(c)(4), the only questions remaining to determine liability would require evidence of the time actually worked by the drivers and the wage rates at which each was compensated. This evidence of the wage rates paid may be available from records of compensation paid the drivers, if it was preserved. Proof of the entire amounts of time worked, however, would likely be unavailable

16

from any records, as MTM's records necessarily omitted significant amounts of time expended

by the drivers in their daily work.  Some or all of this evidence, therefore, would require

testimony from the drivers to show the amounts of time worked and/or the wages they were paid

by a just and reasonable inference.  Pls. Mem. in Supp. Class Cert. 27, ECF No. 134 (citing

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

Absent certification of the issues submitted to class adjudication, however, the questions

presented by these issues would require separate adjudication in multiple trials.  Wasted

resources of this Court, one or more juries and the parties, as well as potentially inconsistent

results, would be the inevitable but regrettable consequence.  Certification of these issues

common to the proposed class, therefore, is warranted and highly preferable to the alternative.

C.   **The Court should clarify that the statute of limitations for putative class members' claims continue to be tolled while the court considers supplemental briefing on plaintiffs' motion for certification under Rule 23(c)(4).**

It is well established that the "commencement of a class action suspends the applicable

statute of limitations as to all asserted members of the class who would have been parties had the

suit been permitted to continue as a class action."  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S.

538, 554 (1974).  Such a rule promotes the "efficiency and economy of litigation which is a

principal purpose" of Rule 23 class actions.  *Id.* at 553.  *See also Crown, Cork & Seal Co. v.

Parker*, 462 U.S. 345, 349 (1983) ("The principal purposes of the class action procedure—

promotion of efficiency and economy of litigation—would thereby be frustrated" in the absence

of tolling).  "If the statute of limitations were not tolled . . . then each class member would have

to file individual actions to preserve their right to relief—which is precisely what class action

suits are designed to avoid."  *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126,

131 (D.D.C. 2015) (citing *Am. Pipe*, 414 U.S. at 551).  A contrary rule "requiring successful

anticipation of the determination of the viability of the class would breed needless duplication of

motions." *Am. Pipe*, 414 U.S. at 553-54; *see also Crown, Cork, & Seal Co.*, 462 U.S. at 350-51

("A putative class member who fears that class certification may be denied would have every

incentive to file a separate action prior to the expiration of his own period of limitations.").

Tolling under *American Pipe* "allows class members 'to rely on the existence of the suit to

protect their rights.'" *Perrow v. District of Columbia*, 435 F. Supp. 3d 9, 12 (D.D.C. 2020)

(quoting *Crown, Cork & Seal Co.*, 462 U.S. at 350). Such "[t]olling lasts from the day a class

claim is asserted until the day the suit is conclusively not a class action." *Scott v. District of

Columbia*, 87 F. Supp. 3d 291, 296 (D.D.C. 2015) (quoting *Sawyer v. Atlas Heating & Sheet

Metal Works, Inc.,* 642 F.3d 560, 563 (7th Cir. 2011)).

      Here, the statute of limitations for the claims of putative class members were tolled by the

filing of the complaint, and the statute of limitations for those claims remain tolled while the

Court considers supplemental briefing regarding Plaintiffs' request to certify a class under Rule

23(c)(4). In its Order of September 24, 2020, the Court recognized that "[c]ertifying an issue

class could materially advance the resolution of the case," *id.* at 27 (quotation marks omitted),

and it noted that, "[f]or instance, certifying a class as to whether MTM is a 'joint employer'

and/or a 'general contractor' for purposes of determining whether it is jointly liable for unpaid

wages under federal and District of Columbia wage laws has some appeal" because "those

questions are potentially dispositive," *id.* at 27-28. Nonetheless, "because neither party has

briefed the legal complexities associated with issue certification and its interplay with Rule

23(b)(3)," the Court determined that "it would be premature for the court to certify an issue class

without further input from the parties." *Id.* at 28. Accordingly, the Court denied without

prejudice Plaintiffs' motion to certify an issue class under Rule 23(c)(4), and subsequently

entered a schedule for the submission of supplemental briefs on the issue.

The Court's September 24, 2020, Order did not end the tolling of putative class members' claims under *American Pipe* because it did not render the suit here "conclusively not a class action." *Scott*, 87 F. Supp. 3d at 296. The Court's denial without prejudice of the motion to certify the class explicitly invited further briefing on the issue of issue class certification under Rule 23(c)(4), and such briefing will play out over the next few months. Thus, the Court's Order did not represent its final resolution of the question of issue class certification. Rather, the Court denied the motion to certify the class without prejudice only because it indicated it would address the question of certification later in the litigation. As a result, the rationales supporting *American Pipe* tolling continue to apply in full force. *See Scott*, 87 F. Supp. 3d at 296 (D.D.C. 2015) ("In *Crown, Cork & Seal*, the Supreme Court 'signaled that *American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members.'" (quoting *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006))). Indeed, if tolling ceased on September 24, 2020, then putative class members would have to move to intervene or file their own complaints in order to protect their rights. That flood of filings while the Court considers supplemental briefing on the question of issue class certification would do nothing to advance the efficient resolution of the litigation. Accordingly, Plaintiffs request clarification that the statute of limitations on putative class members' claims remain tolled under *American Pipe* because the Court's September 24, 2020, Order is not its final determination of the question of certification of an issue class and did not "conclusively" decide that the action is not a class action. Plaintiffs make this request out of an abundance of caution because of the unusual procedural posture of this case.

In the alternative, the Court should exercise its discretion to equitably toll the statute of limitations for putative class members from the date of the Court's Order denying without

prejudice Plaintiffs' motion for class certification under Rule 23(c)(4), until the date when the

Court rules on this renewed request for certification under Rule 23(c)(4).  *See Dyson v. District*

*of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013) ("Equitable tolling is meant to 'ensure[ ] that

the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in

which to file suit.'" (quoting *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir.

2003))).

Dated: December 7, 2020                          Respectfully submitted,

                                                 */s/ Stacy N. Cammarano*
                                                 Joseph M. Sellers (#318410)
                                                 Stacy N. Cammarano (#1510736)
                                                 Cohen Milstein Sellers & Toll PLLC
                                                 1100 New York Avenue NW, Fifth Floor
                                                 Washington, DC 20005
                                                 Telephone (202) 408-4600
                                                 jsellers@cohenmilstein.com
                                                 scammarano@cohenmilstein.com

                                                 Michael T. Kirkpatrick (#486293)
                                                 Public Citizen Litigation Group
                                                 1600 20th Street NW
                                                 Washington, DC 20009
                                                 Telephone (202) 588-1000
                                                 mkirkpatrick@citizen.org

                                                 *Counsel for Plaintiffs*