## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
                                                          )
**ISAAC HARRIS, et al.,**                  )
                                                          )
      **Plaintiffs,**                            )
                                                          )
        **v.**                                        )       **Case No. 17-cv-01371 (APM)**
                                                          )
**MEDICAL TRANSPORTATION**          )
**MANAGEMENT, INC.,**                       )
                                                          )
      **Defendant.**                          )
—————————————————————— )

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Medical Transportation Management, Inc. ("MTM") is a private company that contracts with the District of Columbia to "manage and administer" non-emergency medical transportation ("NEMT") services for the District's Medicaid recipients. MTM does not employ drivers directly to deliver NEMT services; rather, it contracts with dozens of transportation service providers ("TSPs") that employ the drivers. Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin are three such drivers. They bring this action individually and on behalf of all others similarly situated (collectively, "Plaintiffs") against MTM to recover unpaid wages under (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 *et seq.*; (2) the D.C. Minimum Wage Act, D.C. Code § 32-1001 *et seq.*; (3) the D.C. Living Wage Act, D.C. Code § 2-220.01 *et seq.*; and (4) the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301. Plaintiffs allege that because MTM is both their joint employer and the general contractor of the TSPs, MTM is liable for their unpaid wages under federal and District of Columbia wage laws.

On July 17, 2018, this court ordered that Plaintiffs' FLSA minimum wage and overtime claims be conditionally certified as a collective action and that notice be sent to potential opt-in

plaintiffs.  *See Harris v. Med. Transp. Mgmt., Inc.* (*Harris II*), 317 F. Supp. 3d 421, 424 (D.D.C. 2018).  Since then, 155 current and former NEMT drivers have filed consent forms to join the collective action, each alleging wage and overtime claims against MTM under the FLSA. Thereafter, Plaintiffs sought certification of a class of approximately 800 drivers under Federal Rule of Civil Procedure 23 for their District of Columbia wage claims.  The court denied class certification on the ground that Plaintiffs had failed to meet the predominance requirements of Rule 23(b)(3).  *See Harris v. Med. Transp. Mgmt., Inc.* (*Harris III*), No. 17-cv-1371 (APM), 2020 WL 5702085, at *1 (D.D.C. Sept. 24, 2020).  The court left open the possibility, however, of certifying an issue class under Rule 23(c)(4) and invited supplemental briefing on the issue.  *See id.* at *13.

Now before the court are two motions: (1) MTM's Motion to Decertify the FLSA Collective Action; and (2) Plaintiffs' supplemental motion to certify claims pursuant to Rule 23(c)(4) and for clarification that the limitations period remains tolled.  For the reasons that follow, the Court (1) will not decertify the FLSA collective action and (2) will certify an issue class under Rule 23(c)(4) on the questions of whether MTM is a joint employer or a general contractor.  The court also confirms that the statute of limitations for the putative class members' claims remained tolled during the pendency of these motions.

I.      **DISCUSSION**[1]

A.      **Decertification of the FLSA Collective Action**

1.      *Legal Standard*

a.      Statutory background

The FLSA requires that employers pay covered employees both a statutory minimum wage and overtime for hours worked in excess of forty hours per week.  29 U.S.C. §§ 206–207. "'Congress passed the FLSA with broad remedial intent' to address 'unfair method[s] of competition in commerce' that cause 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (alteration in original) (first quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015), and then quoting 29 U.S.C. § 202(a)).  In keeping with this remedial intent, when an employer fails to comply with the statute's requirements, under section 216(b) of the FLSA, employees can pursue an action against an employer in a representative capacity on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  This type of action, known as a "collective action," allows employees who are similarly situated to the named plaintiffs to file a written consent to opt into the case.  *See id.*

The purpose of collective action under the FLSA is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "The Supreme Court has characterized § 216(b) as a 'joinder process.'"  *Scott v. Chipotle Mexican*

---

[1]  The court assumes familiarity with the facts and procedural history detailed in its prior opinions in this action and therefore does not formally recite them here.  *See Harris v. Med. Transp. Mgmt., Inc.* (*Harris I*), 300 F. Supp. 3d 234, 237–39 (D.D.C. 2018); *Harris III*, 2020 WL 5702085, at *1–3.  To the extent that certain facts are particularly relevant to the issues raised in the instant motions, the court includes them in the discussion below.

*Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 n.1 (2013)).  Importantly, "[r]ather than providing for a mere procedural mechanism, as is the case with [class actions under] Rule 23, section 216(b) establishes a '*right* . . . to bring an action by or on behalf of any employee, and [a] *right* of any employee to become a party plaintiff to any such action,' so long as certain preconditions are met."  *Id.* (quoting 29 U.S.C. § 216(b)); *see also Hoffmann-La Roche Inc.*, 493 U.S. at 173 (noting that Congress gave employees the "right" to proceed collectively); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) ("The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" (quoting *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016))).

For an action to proceed collectively, section 216(b) sets two basic requirements: (1) members must be "similarly situated" and (2) members must affirmatively consent to join the action.  29 U.S.C. § 216(b).  Although the statute does not prescribe a process for certifying a collective proceeding, the "near-universal practice" among courts involves a two-step process.  *Campbell*, 903 F.3d at 1100 (citing 1 McLaughlin on Class Actions § 2:16 (14th ed. 2017)); *see also Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014) (applying two-step certification process).  At the first stage—what is often called "preliminary" or "conditional" certification—"the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who *may be* 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added); *see also Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52–53 (D.D.C. 2012) (collecting cases).  This stage requires only "a 'modest factual showing sufficient to demonstrate that [named] and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Castillo v. P & R Enters.*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007) (quoting *Chase v.*

*AIMCO Props., L.P.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005)).  "[T]he district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence."  *Campbell*, 903 F.3d at 1109.  "The level of consideration is 'lenient' . . . [and] loosely akin to a plausibility standard."  *Id.* (quoting *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013)).

The second step of the process is triggered when defendants move to decertify the conditional collective action following the conclusion of discovery.  *See id.*  During this stage of the analysis, the court employs a stricter standard for determining whether plaintiffs are "similarly situated," as there is more information on which to base its decision.  *Id.*  Plaintiffs bear the burden of showing, by a preponderance of the evidence, that they are similarly situated to the remainder of the proposed collective action members.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012); *see also O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009) ("The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs."); *cf. Campbell*, 903 F.3d at 1118 (applying summary judgment standard to decertification).  If the court concludes that plaintiffs are similarly situated, the case proceeds to trial as a collective action; if plaintiffs fail to meet their burden, the court decertifies the conditional collective action.

This case is at the second stage, and therefore the question for the court is whether Plaintiffs have satisfied their burden of showing that the named and opt-in plaintiffs are "similarly situated."

b.    Similarly situated

The term "similarly situated" is not defined under the FLSA, and the D.C. Circuit has not yet spoken on this issue.  *See Ayala*, 12 F. Supp. 3d at 170.  The Circuits that have weighed in have not settled on a single approach, and there have been recent developments on the topic.  For years,

the majority approach—and the only approach adopted at the Circuit level—was the so-called "ad hoc" approach.  Under this flexible approach, courts employ a three-prong test to determine whether party plaintiffs[2] are similarly situated, considering the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment." *Scott*, 954 F.3d at 517 (internal quotation marks omitted); *see also Zavala*, 691 F.3d at 536 (adopting ad hoc approach); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262–64 (11th Cir. 2008) (same); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (upholding the district court's application of the ad hoc approach as "[a]rguably . . . the best . . .  approach[]").

"The minority approach," on the other hand, has been to "treat a collective as an opt-in analogue to a Rule 23(b)(3) class."  *Campbell*, 903 F.3d at 1111.  "District courts following the minority approach tend to expect a collective to satisfy the requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority."  *Id.* (citing Fed. R. Civ. P. 23(b)(3)); *see, e.g.*, *Shushan v. Univ. of Colo.*, 132 F.R.D. 263, 268 (D. Colo. 1990).  "No circuit court has adopted the minority approach in toto."  *Campbell*, 903 F.3d at 1111.  "The Seventh Circuit has imported the 'predominance' requirement of Rule 23(b)(3)" only, *id.* (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)), whereas "[a]ll other circuits to have considered the issue . . . have rejected the analogy to Rule 23," *id.*; *see, e.g.*, *Monroe*, 860 F.3d at 405–06; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

---

[2] "The FLSA does not use the terms 'original' or 'opt-in' plaintiff at all; the FLSA instead refers to *all* plaintiffs in a collective action as 'party plaintiff[s].'"  *Campbell*, 903 F.3d at 1104 (alteration in original) (quoting 29 U.S.C. § 256(a)).

More recently, the Ninth Circuit has taken a different tack, with the Second Circuit following suit.  In *Campbell v. City of Los Angeles*, the Ninth Circuit considered whether approximately 2,500 police officers who had moved for certification of a collective action on the basis of a "pervasive, unwritten policy discouraging the reporting of overtime" were similarly situated.  903 F.3d at 1099.  In tackling that question, the court first expressed its disapproval of the two prevailing approaches.  *Id.* at 1110–16.  With regard to the minority approach, the court "agree[d] with the consensus view that . . . [it] rests improperly on an analogy to Rule 23 lacking in support in either the FLSA or the Federal Rules of Civil Procedure."  *Id.* at 1111.  And as for the ad hoc approach, the court opined that it too "import[s], through a back door, . . . the Rule 23(b)(3) requirements of adequacy of representation, superiority of the group litigation mechanism, or predominance of common questions."  *Id.* at 1115.  More pointedly, the court found the ad hoc approach "inadequately accounts for the meaning of 'similarly situated'" in the context of the FLSA.  *Id.* at 1117.  It focuses "on points of potential factual or legal *dissimilarity* between party plaintiffs" when the focus should be, "in light of the collective action's reason for being within the FLSA," whether the "party plaintiffs [are] alike with regard to some *material* aspect of their litigation."  *Id.* at 1113–14.

The only Circuit to address the issue since *Campbell* has adopted its approach.  In *Scott v. Chipotle Mexican Grill, Inc.*—a case about Chipotle's alleged misclassification of certain employees as exempt from overtime in violation of federal and state labor laws—the Second Circuit echoed the Ninth Circuit's concerns with the "ad hoc" approach.  954 F.3d at 517.  Primary among those concerns was that "district courts employing the ad hoc factors consider the ways in which the plaintiffs are factually *disparate* and the defenses are *individualized*" instead of "considering the ways in which the opt-in plaintiffs are *similar* in ways material to the

disposition of their FLSA claims." *Id.* This misplaced focus, the court opined, conflicts with the FLSA and unduly limits plaintiffs' "right" to proceed collectively. *See id.* at 515–17.

This court agrees that the *Campbell* approach is the superior of the three, as it is the most in tune with the text and purpose of section 216(b). In so finding, the court agrees with *Scott*, *Campbell*, and countless other courts that have found that the FLSA, by design, imposes a lower bar to collective action than Rule 23. *Id.* at 520 (finding that the FLSA not only "'imposes a bar lower [than Rule 23, but also] in some sense [lower than] even [] Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial'" (quoting *Campbell*, 903 F.3d at 1112)).[3] Recall that the purpose of collective action under the FLSA is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann–La Roche Inc.*, 493 U.S. at 170. As noted in *Scott*, "[t]his result . . . can only be achieved to the extent that [the party plaintiffs] . . . share one or more issues of law or fact that are material to the disposition of their FLSA claims." 954 F.3d at 516. Focusing on differences, rather than similarities, is contrary to the terms of section 216(b) and risks "import[ing], through a back door, requirements with no application to the FLSA." *Campbell*, 903 F.3d at 1115.

The court therefore will apply the *Campbell* test to determine whether the party plaintiffs in this case are similarly situated. Thus, in deciding whether to decertify, the court primarily asks

---

[3] *Cf. also Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (describing Rule 23 as "more demanding" than § 216(b)); *O'Brien*, 575 F.3d at 584–85 (describing Rule 23 as "a more stringent standard" than § 216(b)); *Thiessen*, 267 F.3d at 1105 ("Congress clearly chose not to have the Rule 23 standards apply to [collective actions], and instead adopted the 'similarly situated' standard."); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (describing actions under § 216(b) and Rule 23 as "mutually exclusive and irreconcilable").

whether plaintiffs are "alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516 (citing *Campbell*, 903 F.3d at 1114).  The court turns now to that inquiry.

2.   *Analysis*

Plaintiffs argue that because there are common issues of law or fact "material to the disposition" of their FLSA claims, any dissimilarities among the 155 party plaintiffs do not defeat collective treatment.  *See* Pls.' Mem. in Opp'n to Def.'s Mot. to Decertify FLSA Collective Action, ECF No. 181 [hereinafter Pls.' Opp'n], at 7.  Plaintiffs acknowledge that certain questions regarding MTM's liability, as well as the matter of damages, will require "trial individually or in small groups of plaintiffs."  *Id.* at 1.  Nevertheless, Plaintiffs contend, there are three common issues that warrant collective treatment, as they will "require the court to decide legal questions that apply to all Plaintiffs and will be resolved through common evidence."  *Id.* at 10.  Those issues are:  (1) "whether MTM qualifies as Plaintiffs' joint employer"; (2) "whether MTM suffered or permitted Plaintiffs to work";[4] and (3) "whether the time expended by Plaintiffs traveling between trips provided to MTM clients and waiting for MTM clients qualifies as compensable work under the FLSA."  *Id.*

MTM makes several arguments as to why the court should decertify the collective action.  First, MTM rejects as improper Plaintiffs' request to certify "issues" under the FLSA, *see* Reply in Supp. of Def.'s Mot. to Decertify FLSA Collective Action, ECF No. 183 [hereinafter Def.'s Reply], at 1, arguing that the language of section 216(b) allows for a collective action only "'to recover the liability' for a violation of the statute," and therefore cannot be read to permit the bifurcation of issues as Plaintiffs seek, *id.* at 6 (quoting 29 U.S.C. § 216(b)).  Second, even if the

---

[4]  The minimum wage and overtime requirements of the FLSA apply to work "suffer[ed] or permit[ed]" by an employer.  29 U.S.C. § 203.  An employer suffers or permits work when it knows or reasonably should know that work is being performed.  *See Akinsinde v. Not-For-Profit Hosp. Corp.*, No. 16-cv-437 (APM), 2018 WL 6251348, at *7 (D.D.C. Nov. 29, 2018).

statute could be read to permit issue certification, MTM argues, evidence of a "collective-wide policy or practice that violated the FLSA" is paramount and the absence of one in this case means Plaintiffs are not similarly situated under any standard.  *See* Def.'s Mot. to Decertify FLSA Collective Action, ECF No. 180, Mem. in Supp. of Def.'s Mot. to Decertify FLSA Collective Action, ECF No. 180-1 [hereinafter Def.'s Mem.], at 14; *see also* Def.'s Reply at 10–14.  Finally, MTM argues, even if a common policy or practice were not a requirement under the *Campbell* test, Plaintiffs' proposed issues would not materially advance the disposition of the party Plaintiffs' FLSA claims since the issues would have to be resolved on an individualized, driver-by-driver basis.  *See* Def.'s Reply at 15–20.  For that same reason, MTM adds, manageability and fairness considerations weigh against the maintenance of a collective action because, among other things, there is "no 'fairness' in permitting Plaintiffs to create a collective action out of non-dispositive issues requiring plaintiff-specific analysis."  *Id.* at 21; *see id.* at 20–24.

The fundamental flaw with MTM's latter argument is that one of the issues proposed by Plaintiffs *is* potentially dispositive:  the antecedent question of whether MTM qualifies as Plaintiffs' joint employer.  Only an "employer" may be held liable under the FLSA.  *See* 28 U.S.C. § 216(b).  The definition of "employer" has been recognized as broad enough to encompass a "joint employer."  *See Harris I*, 300 F. Supp. 3d at 240 (citing 29 C.F.R. § 791.2(a)).  Thus, if MTM is found *not* to be a joint employer, the case goes away.

The D.C. Circuit applies an "economic reality" test to determine whether an employer-employee relationship exists.  *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001); *see also Harris I*, 300 F. Supp. 3d at 240–41 (observing that *Morrison* did not involve a "joint employer" inquiry but finding the factors relevant).  The factors to be considered under that test are whether MTM "(1) had the power to hire and fire the employees, (2) supervised

and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Morrison*, 253 F.3d at 11 (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).  MTM contends that the very application of a four-factor test shows this issue is "inherently fact intensive" and unsuitable for collective resolution.  Def.'s Mem. at 22.  It explains, "[t]he joint employer analysis involves an assessment of the relationship between the individual transportation providers and the drivers in their respective employ as to the factors the D.C. Circuit has instructed courts to examine."  *Id.*  Moreover, MTM contends, "the evidentiary record shows that drivers' individual work schedules and assignments are not directed by MTM and that the transportation providers alone controlled the means and manner of the drivers' work."  *Id.*  "The transportation providers decide how each of their driver's workday is structured"; "the manner by which each work day begins and ends"; and "the manner, as well as the amount, of their drivers' respective pay, with such manners ranging variously from hourly, bi-weekly, per trip or per mileage."  *Id.* at 23 (footnotes omitted).  The court disagrees that these differences defeat a collective proceeding.

Although evidence regarding each driver's schedule, assignments, and pay may be individualized, MTM's role in devising those terms of employment is not.  Its role is likely to be defined by policies and practices that are broadly applicable to all TSPs, and thus subject to a common defense.  MTM does not, for example, argue that it might be a joint employer as to some TSPs and not others.  MTM is likely to be a joint employer for all drivers or for none at all.  The court therefore stands by its assessment, as articulated in its Memorandum Opinion on class certification, that "[c]ommon evidence is likely to resolve the joint employer question" under both the FLSA and the state law claims.  *Harris III*, 2020 WL 5702085, at *9.  "For example, [the parties] no doubt will look to MTM's policy documents and service agreements with

subcontractors, as well as testimony by MTM employees regarding its hiring and training practices and the rules and standards MTM requires drivers to follow." *Id.* To the extent MTM maintains that "the evidentiary record shows that the various [TSPs], not MTM, set the drivers' individual work schedules and that the drivers had vastly different individual experiences with respect to" compensation, MTM will rely on that evidence, collectively, to show that it is not a joint employer. Def.'s Reply at 17–18. In that sense, even the uncommon evidence is common.

MTM's other arguments fare no better. The court sees no reason why it cannot certify a collective on one or more issues so long as those common issues are "material to the resolution of the party plaintiffs' claims." *Campbell*, 903 F.3d at 1115. Indeed, the *Campbell* court seemed to contemplate such a result, explaining that "[u]nder section 216(b), if the party plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims." *Id.* "District courts have ample experience managing cases in this way. For example, Rule 42, which offers a closer analogy to the collective mechanism than Rule 23, already provides for the possibility of partial consolidation for trial, to the extent separate actions involve common questions of law or fact." *Id.* (citing Fed. R. Civ. P. 42(a)(1)).[5]

Nor is the court persuaded by MTM's insistence that there *must* be evidence of a common FLSA-violating policy or practice to satisfy the similarly situated standard. *See* Def.'s Reply

---

[5] MTM also argues that Plaintiffs cannot now "pivot" and seek issue certification when it was not requested in the Complaint or in Plaintiffs' Motion for Conditional FLSA Certification. *See* Def.'s Reply at 5. But the court sees no reason why, following discovery, Plaintiffs cannot defend against decertification by seeking a narrower collective proceeding that is consistent with the evidence, even if the Complaint articulated a broader theory of collective action. Certainly, proceeding on a narrower theory presents no problem of notice, and MTM has not articulated how it is prejudiced by a narrower theory of collective action. For example, MTM has not said that it would have demanded additional evidence from drivers or sought more evidence from TSPs had it understood that Plaintiffs would seek to proceed collectively only on the question of joint employer status. MTM's attempt to equate this shift in theory to an improper amendment of the Complaint, *see id.* (citing *Arbitraje Casa De Cambio v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)), is therefore misplaced, and MTM has offered no case law to support its position.

at 10–15.  To be sure, the vast majority of cases involving the question of whether party plaintiffs are similarly situated have turned on the existence of a common violative policy or practice.  *See, e.g., Campbell*, 903 F.3d at 1099; *Monroe*, 860 F.3d at 404; *Morgan*, 551 F.3d at 1263.  In *Campbell*, for instance, the lack of a common FLSA-violating policy was dispositive because it was the only justification for collective action offered by the plaintiffs.  *See Campbell*, 903 F.3d at 1120 (finding plaintiffs were not similarly situated where there was no evidence of a department-wide policy of discouraging overtime, which was "*the sole justification advanced*" for collective treatment (emphasis added)).  Although a common policy or practice might be *sufficient* to show party plaintiffs are similarly situated, this case illustrates why a common policy or practice is not *necessary*.  *Cf. O'Brien*, 575 F.3d at 585 ("We do not mean to require that all collective actions under § 216(b) be unified by common theories of defendants' statutory violations . . . .").

Moving this matter forward collectively is potentially dispositive of the case:  if Plaintiffs cannot carry their burden to show that MTM is a joint employer, they are out of luck.  If they can make such a showing, the case moves forward.  That is the definition of material, and it is precisely the type of issue Congress anticipated employees could pursue collectively.  *See Hoffman-La Roche*, 493 U.S. at 170.  While a defendant in a putative collective action under the FLSA has a right to defend against individualized claims on an individual basis, courts have held that "this right must be balanced [against] the rights of the plaintiffs—many of whom would likely be unable to bear the costs of an individual trial—to have their day in court."  *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1026 (D. Minn. 2007); *see Hoffman-La Roche*, 493 U.S. at 170.  And there can be no doubt that permitting this case to proceed as a collective action on the issue of whether MTM is a joint employer will benefit individual plaintiffs and the judicial system by the efficient resolution in one proceeding of a common issue of law and fact.  *See Hoffman-La Roche*,

493 U.S. at 170.  When that is the case, and the party plaintiffs are similarly situated, "decertification of a collective action . . . cannot be permitted unless the collective mechanism is truly infeasible."  *Campbell*, 903 F.3d at 1116.  It is not truly infeasible here.

The court recognizes that at least two district courts, in cases factually similar to this one, have come out the other way—rejecting certification of a collective action on the issue of whether defendant is a joint employer and holding that evidence of a common FLSA-violating policy or practice is required for plaintiffs to be similarly situated.  *See, e.g.*, *Edmonds v. Amazon.com, Inc.*, No. C19-1613, 2020 WL 5993908, at *5 (W.D. Wash. Oct. 9, 2020); *Gibbs v. MLK Express Servs., LLC*, No. 18-cv-434, 2019 WL 2635746, at *9 (M.D. Fla. June 27, 2019).  But those decisions are in no way binding on this court, and to the extent that *Edmonds*, in particular, found that the "absence of a plausibly alleged common plan or policy is dispositive," 2020 WL 5993908, at *6, this court respectfully disagrees for the reasons articulated above.

In sum, because the court finds that Plaintiffs have demonstrated that they are similarly situated as to one of the three issues they have identified—whether MTM is a joint employer—the court denies MTM's motion to decertify the collective action.

## B.    Certification of an Issue Class Under Rule 23(c)(4)

In its Memorandum Opinion denying Plaintiffs' motion for class certification, the court denied without prejudice Plaintiffs' motion to certify an issue class under Rule 23(c)(4), as the issue had not been fully briefed by the parties.  *See Harris III*, 2020 WL 5702085, at *13.  The court observed that Rule 23(c)(4) is not without controversy, as courts and commentators have split on its proper interaction with Rule 23(b)(3)'s requirement that common issues predominate. *Id.* at *12 (citing 2 Newberg on Class Actions § 4:91 (5th ed. 2020)).  The court now discusses the state of the law on this issue before addressing the parties' arguments.

### 1.    *Legal Standard*

Rule 23(c)(4) provides, "[w]hen appropriate[,] an action may be brought or maintained as a class action with respect to *particular issues*."   Fed. R. Civ. P. 23(c)(4) (emphasis added). Historically, there had been a "sharp split in early academic commentary and a minor split in early cases" regarding Rule 23(c)(4)'s proper interaction with Rule 23(b)(3)'s requirement that for a class to be certified, "'the questions of law or fact common to class members [must] predominate over any questions affecting only individual members.'"   2 Newberg on Class Actions § 4:91 (alteration in original) (quoting Fed. R. Civ. P. 23(b)(3)).   The two primary schools of thought on this interplay have been characterized as the "broad" and "narrow" views.   *Id.*   Proponents of the broad view believe that courts should apply Rule 23(b)(3)'s predominance and superiority prongs after common issues have been identified for class treatment under Rule 23(c)(4).   The broad view thus permits certification under Rule 23(c)(4) even when, as the court has already ruled in this case, predominance has not been satisfied for the cause of action as a whole.   *See, e.g.*, *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (permitting issue certification "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)[ ] and proceed with class treatment of these particular issues.").   The majority of Circuits has expressed at least some support for this approach.   In addition to the Second and Ninth Circuits, the Sixth Circuit has expressly endorsed it, *see Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 412 (6th Cir. 2018), and the Third, Fourth, Seventh, and Eighth Circuits "have indicated support for it," 2 Newberg on Class Actions § 4:91 (citing cases).

15

The only Circuit to subscribe to "the narrow view" has been the Fifth Circuit, which in a footnote to a 1996 opinion "appear[ed] to reject issue class certification unless the case itself meets the predominance requirements." *Id.* (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial.")). Subsequent caselaw from within the Fifth Circuit, however, "indicates that any potency the narrow view once held there has dwindled." *Martin*, 896 F.3d at 412 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (noting that bifurcation might serve "as a remedy for the obstacles preventing a finding of predominance" but that the plaintiffs had not made such a proposal to the district court)); *see also* 2 Newberg on Class Actions § 4:91 (explaining that "[a] more recent Fifth Circuit decision casts some doubt on the continuing validity of" the footnote in *Castano* and citing *In re Deepwater Horizon*, 739 F.3d 790, 807 n.65 (5th Cir. 2014)).

Neither the Supreme Court nor the D.C. Circuit has weighed in on the scope of Rule 23(c)(4).[6] Although one court in this District has adopted the narrow view, *see Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394 (D.D.C. 2017), this court agrees with the vast majority of appellate courts that have found the broad view to be the better approach.

*First*, the broad approach is consistent with the structure of Rule 23. It "respects each provision's contribution to class determinations by maintaining Rule 23(b)(3)'s rigor without rendering Rule 23(c)(4) superfluous." *Martin*, 896 F.3d at 413. The predominance inquiry is not

---

[6] Plaintiffs place much stock *In re Johnson*, where the D.C. Circuit held that the district court had not manifestly erred "by in effect certifying an issue class action" because "a district court has a good deal of discretion in the management of the litigation before it." 760 F.3d 66, 75 (D.C. Cir. 2014). But this reliance is misplaced. *Johnson* was on review for manifest error, and the court expressly declined to weigh in on the "appropriate use of an issue class," as it had not been "raised or briefed." *Id.*

discarded entirely but applied *after* identifying issues suitable for class treatment. By contrast, "the narrow view would virtually nullify Rule 23(c)(4)." *Id.*; *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226 (observing that the narrow view contravenes the "well-settled principle that courts should avoid statutory interpretations that render provisions superfluous" (cleaned up)); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439–40 (4th Cir. 2003) (same).

*Second*, the broad view comports with the plain language of Rule 23, which provides for certification of an issue class "[w]hen appropriate." Fed. R. Civ. P. 23(c)(4). "A prior version of Rule 23 even instructed that, after selecting issues for class treatment, the remainder of Rule 23's provisions 'shall then be construed and applied accordingly.'" *Martin*, 896 F.3d at 413; *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226. Although that language changed with the 2007 amendment of the Rule, "the Advisory Committee made clear that the changes to the Rule's language were 'stylistic only.'" *Martin*, 896 F.3d at 413 (quoting Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 2007 amend.).[7] The Advisory Committee Notes lend further support for the broad view, citing as an example the fact that "in a fraud or similar case[,] the action may retain its 'class' character *only* through the adjudication of liability to the class[,]" and "the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.'" *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226 (emphasis added) (quoting Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 1966 amend.). That language suggests that "a court may employ Rule 23(c)(4) when it is the 'only' way that a litigation retains its class character, *i.e.*, when

---

[7] The Sixth Circuit in *Martin* also observed that the "Advisory Committee has [] declined to alter the language of Rule 23(c)(4) to reflect the narrow view or otherwise limit the use of issues classes." *Id.* (citing Advisory Committee on Civil Rules, *Rule 23 Subcommittee Report* 90–91 (2015), http://www.uscourts.gov/sites/default/files/2015-11-civil-agenda_book.pdf (indicating that the broad approach's dominance reflects the proper understanding of the Rule—"[t]he various circuits seem to be in accord about the propriety of such [issue] treatment 'when appropriate,' as Rule 23(c)(4) now says")).

common questions predominate only as to the 'particular issues' of which the provision speaks." *Id.*

*Finally*, as noted by the Sixth Circuit in *Martin*, "the concomitant application of Rule 23(b)(3)'s superiority requirement ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions, but instead where the common questions render issue certification the superior method of resolution."  896 F.3d at 413.

For these reasons, the court is persuaded that the broad view is the better interpretation of Rule 23(c)(4), and turns now to assessing whether, under that approach, issue certification is warranted in this case.

2.     *Analysis*

In arguing for certification of an issue class under Rule 23(c)(4), Plaintiffs identify four issues that "are common to all class members and as to which the proof and defense can be resolved for the class as whole."  Pls.' Suppl. Mem. in Supp. of Certification of Claims Pursuant to Rule 23(c)(4) & Clarification that the Limitations Period Remains Tolled, ECF No. 179 [hereinafter Pls.' Mem.], at 8.  Those issues are:

> 1. Whether MTM qualifies as a joint employer of the putative class members;
>
> 2. Whether MTM is a general contractor that is strictly liable for any violations of the wage laws committed by its subcontractors;
>
> 3. Whether the time expended by putative class members traveling between trips provided to MTM clients and waiting for MTM clients qualifies as compensable work under the laws invoked by this action; and
>
> 4. Whether the wage rates set by the Living Wage Act and the Service Contract Act apply to time worked on MTM's managed-care contracts.

*Id.*  Plaintiffs contend that "[b]ecause resolution of these issues on a class-wide basis will advance the resolution of this action, these issues can and should be certified pursuant to Rule 23(c)(4)."

*Id.* (citing *Martin*, 896 F.3d at 415–16).  The court agrees as to the first and second issues—whether MTM is a joint employer or general contractor—but not as to the latter two.

Ultimately, the question here is the same as it was in determining whether to decertify the collective action under the FLSA:  Would certifying an issue class "materially advance the litigation"?  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Gonzalez v. Owens Corning*, 885 F.3d 186, 203 (3d Cir. 2018) (amended Apr. 4, 2018) ("The District Court therefore correctly determined that a Rule 23(c)(4) class would not 'materially advance resolution of the underlying claims . . . .'"); *Valentino*, 97 F.3d at 1229 (holding that the district court did not properly consider Rule 23(c)(4) when it "did not discuss whether the adjudication of the certified issues would significantly advance the resolution of the underlying case").  The answer to that question under Rule 23(c)(4) is the same as in the collective action context of the FLSA:  Yes.

As the court observed in its Memorandum Opinion denying class certification, "[i]f MTM is neither a joint employer nor a general contractor, that would bring an end to the case—it cannot be held liable under District of Columbia law for underpayment of wages."  *Harris III*, 2020 WL 5702085, at *6.  "On the other hand, if MTM does qualify as a joint employer or a general contractor, that legal conclusion would answer a threshold question in Plaintiffs' favor that is necessary to make out their claims."  *Id.*  Moreover, Plaintiffs have shown that they intend to rely on evidence common to the class, including MTM's service agreements, training policies and manuals, and corporate testimony, to show that MTM is a joint employer or general contractor for the purposes of their District of Columbia wage claims.  *See id.* at *10.

MTM asserts two overarching arguments in opposition to certification of an issue class. First, it argues that "certification pursuant to Rule 23(c)(4) is appropriate only where the

requirements of both Rule 23(a) and one of the subsections of Rule 23(b) are satisfied with respect to the entire action or a specific cause of action." Def.'s Opp'n to Pls.' Mot., ECF No. 182 [hereinafter Def.'s Opp'n], at 1. The court already has rejected this argument, finding that the broad view is the superior of the two prevailing approaches. *See supra* at p. 18.

Next, MTM argues that certification of an issue class is proper only if the issue "at least substantially resolve[s] the merits of liability on a class-wide basis." Def.'s Opp'n at 17; *see id.* at 17–25. This argument is similar in kind to the one MTM asserted in the context of the FLSA collective—that proof of a common FLSA-violating policy is *necessary* to satisfy the similarly situated standard. But, as Plaintiffs point out, courts within this Circuit and others have rejected a requirement that an issue class fully resolve liability in the context of 23(b)(3) and 23(c)(4) alike. *See* Pls.' Reply Mem. in Supp. of Mot. for Cert. of Claims Pursuant to Rule 23(c)(4), ECF No. 184 [hereinafter Pls.' Reply], at 4; *see also In re Prograf Antitrust Litig.*, No. 11-MD-02242, 2014 WL 4745954, at *1 (D. Mass. June 10, 2014) (collecting cases and noting "[c]ertification can also be of more limited scope, covering specific common issues short of completely resolving liability"); *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 160 (D.D.C. 2014) ("'[T]he common issues need only be predominant, not dispositive of the litigation.'" (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 116 (D.D.C. 2007))); *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 307 (D.D.C. 2007) (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001) (same). At bottom, MTM's argument that an issue class is appropriate only where the issue would "substantially resolve" the case is not supported by either the text of Rule 23(c)(4) or the case law.[8] In any event, the antecedent question of whether MTM

---

[8] MTM also argues that several cases Plaintiffs rely on involved a discrete common policy, and because Plaintiffs have not alleged such a policy here, certification of an issue class is not warranted. Def.'s Opp'n at 18, 23. Just as the court noted in the context of an FLSA collective, however, although a common policy might in some cases be

is a joint employer or general contractor does "go[] directly to the heart of . . . liability."  Def.'s Opp'n at 1.  MTM cannot be held liable for Plaintiffs' District of Columbia statutory wage claims if it is not a joint employer or a general contractor.  Resolving such a dispositive issue would "materially advance the litigation."  *McLaughlin*, 522 F.3d at 234.  Accordingly, the court will grant Plaintiffs' request to certify a class on the issue of whether MTM is a joint employer or general contractor.

The court agrees with MTM, however, that the other two issues Plaintiffs seek to certify are not suitable for class-wide resolution.  The issue of whether the time expended by putative class members traveling between trips provided to MTM clients and waiting for MTM clients qualifies as compensable work under District of Columbia wage laws is fact intensive and highly individualized.   Indeed, as noted above, the record shows that at least some TSPs compensated their drivers for such time.  *See* Def.'s Opp'n to Pl.'s Mot. for Class Cert., ECF No. 142-2 [hereinafter Def.'s Opp'n to Class Cert.], Decl. of Omar Amit of AB&B Transportation, ECF No. 142-18, ¶ 7; Def.'s Opp'n  for Class Cert., Decl. of Merlin Fossi of MBI, ECF No. 142-8, ¶ 7; Def.'s Opp'n to Class Cert., Decl. of Saidou Ouedraogo of Mariet & B, ECF No. 142-22, ¶ 7.  As "questions of law or fact common to class members [do not] predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), it is an issue that will need to be decided on a driver-by-driver basis, and it is therefore not suitable for issue certification, *see Martin*, 896 F.3d at 411 ("Under . . . the broad view, courts apply the Rule 23(b)(3) predominance and superiority prongs after common issues have been identified for class treatment under Rule 23(c)(4).").

---

sufficient to warrant issue certification, MTM cites no case suggesting that a common policy is *required*.  *See supra* p. 13.

And as for the issue of whether the wage rates set by the Living Wage Act and the Service Contract Act apply to time worked on MTM's managed-care contracts, that is an ancillary legal question better left for the damages phase of the litigation. Its resolution will not "materially advance the litigation." *McLaughlin*, 522 F.3d at 234. The parties agree that individual trials to determine damages will be necessary, *see, e.g.*, Pls.' Mem. at 16, and certifying an issue class on a damages-related legal question is premature before MTM's liability has been established. The court thus denies Plaintiffs' request to certify a class as to the proper wage rate. *See Martin*, 896 F.3d at 413 ("[T]he concomitant application of Rule 23(b)(3)'s superiority requirement ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions, but instead where the common questions render issue certification the superior method of resolution.").

### C.     Tolling of Statute of Limitations

Finally, Plaintiffs seek clarification that the statute of limitations for the putative class members' claims remains tolled notwithstanding the court's denial without prejudice of Plaintiffs' request to certify a class under Rule 23(c)(4). *See* Pls.' Mem. at 17–20. The court concurs with Plaintiffs that the statute of limitations remains tolled because the court's Memorandum Opinion denying class certification under Rule 23(b)(3) left open the possibility of certification of an issue class under Rule 23(c)(4), *Harris III*, 2020 WL 5702085, at *13. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").

MTM's argument that tolling is not warranted because it "would not promote efficiency and economy of litigation," Def.'s Opp'n at 33, is not well taken. The concerns articulated by the

Supreme Court in *American Pipe & Construction Company v. Utah* are equally valid here. 414 U.S. at 554 ("A contrary rule . . . would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principle purpose of the procedure.").  "If the statute of limitations were not tolled . . . then each class member would have to file individual actions to preserve their right to relief—which is precisely what class actions suits are designed to avoid."  *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 131 (D.D.C. 2015) (citing *Am. Pipe*, 414 U.S. at 551); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350–51 (1983) ("[Without tolling,] putative class member[s] who fear[] that class certification may be denied would have every incentive to file a separate action prior to the expiration of [their] own period of limitations.").

If tolling had ceased with the court's denial of class certification under Rule 23(b)(3), then the putative class members would have to move to intervene or file their own complaints in order to protect their rights.  But it would not make sense for them to do so prior to the court deciding whether certification of an issue class under Rule 23(c)(4) is proper—a possibility left plainly open by the court's prior opinion.  *See Harris III*, 2020 WL 5702085, at *13.  As the Seventh Circuit held in *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, "[t]olling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action."  642 F.3d 560, 563 (7th Cir. 2011).  That day has not yet come in this case.

## II.   CONCLUSION AND ORDER

For the reasons set forth above, the court denies MTM's motion to decertify the FLSA collective, ECF No. 180, and grants Plaintiffs' motion for certification of an issue class under

Rule 23(c)(4), ECF No. 179, on the issues of whether MTM is a joint employer or a general contractor.

Dated: August 6, 2021

Amit P. Mehta
United States District Judge