## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ISAAC HARRIS et al.,**  )<br><br>  **Plaintiffs,**  )<br><br>  **v.**  )<br><br> **MEDICAL TRANSPORTATION**  )<br>  **MANAGEMENT, INC. et al.,**  )<br><br>  **Defendants.**  ) | **Case No. 17-cv-1371 (APM)** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Medical Transportation Management, Inc. ("MTM") seeks interlocutory review of this court's refusal to decertify a collective action under the Fair Labor Standards Act ("FLSA"). MTM also requests a stay of discovery pending a decision from the D.C. Circuit on whether to review a separate but related decision by this court to certify an issue class.  The D.C. Circuit has deferred its decision pending a ruling by this court on MTM's motion for interlocutory review.

For the reasons discussed below, the court finds that an immediate appeal of the FLSA decertification denial would not "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's ruling[] [is] reversed." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 100 (D.D.C. 2003).  Accordingly, MTM's motion to certify is denied, and so too is its motion for a stay.

## I.

MTM is a private company that contracts with the District of Columbia to manage and administer non-emergency medical transportation services for the District's Medicaid recipients. MTM does not provide the transportation services itself; rather, it contracts with dozens of

transportation service providers ("TSPs") that, in turn, employ drivers who take Medicaid recipients to and from medical appointments.  Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin have worked at various times as drivers for different TSPs contracting with MTM.  They filed this action four years ago, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), against MTM to recover unpaid wages under (1) the FLSA, 29 U.S.C § 201 *et seq.*; (2) the D.C. Minimum Wage Act, D.C. Code § 32-1001 *et seq.*; (3) the D.C. Living Wage Act, D.C. Code § 2-220.01 *et seq.*; and (4) the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301.  Plaintiffs allege that because MTM is both their joint employer and the general contractor of the TSPs, MTM is liable for their unpaid wages under federal and District of Columbia wage laws.

In August 2021, this court issued an order (1) denying MTM's motion to decertify the FLSA collective action this court conditionally certified in July 2018 and (2) granting Plaintiffs' motion to certify an issue class under Federal Rule of Civil Procedure 23(c)(4).  *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-cv-1371 (APM), 2021 WL 3472381, at *1 (D.D.C. Aug. 6, 2021). As relevant here, the court concluded that (1) Plaintiffs were "similarly situated" for purposes of the FLSA on the question whether MTM qualifies as their joint employer; (2) the case could proceed as a collective action on the joint-employer question; and (3) the question whether MTM is a joint employer or a general contractor would "materially advance the litigation" and so could proceed on an issue-class basis under Rule 23(c)(4).  *Id.* at *7, *10.[1]

---

[1] The FLSA makes a business liable for unpaid wages if it is deemed a joint employer.  *See Harris v. Med. Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 240 (D.D.C. 2018).  District of Columbia wage laws similarly extend liability based on joint-employer status, *see id.* at 246, but they also impose liability if the business is deemed a general contractor of a sub-contractor, D.C. Code § 32-1012(c).  The question of MTM's status as a general contractor therefore is relevant only to the certified issue class and not the collective action under the FLSA.

## II.

Under 28 U.S.C. § 1292(b), certifying an order for interlocutory appeal is appropriate when "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs.*, 297 F. Supp. 2d at 95.  The party seeking interlocutory review "bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (internal quotation marks omitted). Given the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," certification is only appropriate in the court's discretion and upon satisfaction of all three of the elements of § 1292(b). *Jud.*" *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)).

Here, none of the four ostensibly "controlling question[s] of law," *id.* at 19, identified by MTM satisfies all three elements.

## A.

The first question MTM identifies as "controlling" is "[w]hether the test applied in the Court's [August 2021] Order constitutes the proper standard for determining whether a group of plaintiffs is 'similarly situated' for purposes of the FLSA collective action provision." Def.'s Mot. to Amend and Certify Order of Aug. 6, 2021 for Interlocutory Appeal, ECF No. 189, Mem. of Law in Supp. of Def.'s Mot., ECF No. 189-1 [hereinafter Def.'s § 1292(b) Mem.], at 2.  In its August 2021 opinion, this court noted that the D.C. Circuit has "not yet spoken" on what makes persons "similarly situated" for purposes of an FLSA collective action and so considered the three

approaches taken by federal courts: (1) the so-called "ad hoc" approach followed by one Circuit court and many district courts, (2) "the minority approach" that places the collective-action question under the lens of Rule 23's class-action requirements, and (3) the approach taken by the Ninth Circuit in *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018). *See Harris*, 2021 WL 3472381, at *3. The court ultimately settled on the *Campbell* approach because it, unlike the other two contenders, does not "import[], through a back door, . . . the [Federal Rule of Civil Procedure] 23(b)(3) requirements" or "focus[] on points of potential factual or legal *dissimilarity* between party plaintiffs when the focus should be, in light of the collective action's reason for being within the FLSA, whether the party plaintiffs are alike with regard to some *material* aspect of their litigation." *Id.* at *3 (alteration and internal quotation marks omitted).

"[T]he differing results reached in the various decisions cited in the [August 2021] Order," Def.'s § 1292(b) Mem. at 5, arguably satisfy the interlocutory-review requirement that there must be a "substantial ground for difference of opinion" as to what "similarly situated" means under the FLSA. *APCC Servs.*, 297 F. Supp. 2d at 95. But MTM must also demonstrate that this question is "controlling." *Id.* It is not. Merely showing that the question is unsettled is not enough. *See Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 145 (D.D.C. 2018) (holding that the mere fact an issue is "one of first impression" does not require or justify interlocutory review). Rather, MTM must show that the question "would require reversal if decided incorrectly" or "could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs.*, 297 F. Supp. 2d at 95–96 (internal quotation marks omitted). MTM, however, nowhere explains how the selection of the ad hoc or minority approach, as opposed to the *Campbell* approach, would make any difference here, let alone

4

"materially affect the course of litigation." *See* Def.'s § 1292(b) Mem. at 5–6. This first "controlling question of law" thus does not justify the exceptional step of interlocutory review.

**B.**

MTM offers three additional "controlling questions of law that warrant interlocutory review."[2] These essentially boil down to one overarching question: Can the question of joint-employer status be the basis for a collective action under the FLSA? In its August 2021 opinion, the court concluded that it could. The court reasoned that "MTM's role in devising [each driver's] terms of employment is . . . likely to be defined by policies and practices that are broadly applicable to all TSPs," and that "MTM is likely to be a joint employer for all drivers or for none at all" based on common evidence. *Harris*, 2021 WL 3472381, at *5. The court moreover determined that proceeding collectively was "potentially dispositive of the case" because "if Plaintiffs cannot carry their burden to show that MTM is a joint employer" the case ends. *Id.* at *6. MTM, by contrast, has consistently argued that "there *must* be evidence of a common FLSA-violating policy or practice to satisfy the similarly situated standard," *see id.*, and it now contends that the question of joint-employer status as the basis for a collective action warrants interlocutory review. Def.'s § 1292(b) Mem. at 6–10.

The court disagrees. Even if this is a "controlling question of law," MTM has failed to demonstrate that it satisfies the remaining elements justifying interlocutory review. *See APCC Servs.*, 297 F. Supp. 2d at 95.

---

[2] Those questions are (1) "Whether a group of plaintiffs can be 'similarly situated' for purposes of an FLSA collective action if they were not subject to any common FLSA-violating policy or practice"; (2) "Whether the existence of a dispute as to whether the members of a collective were jointly employed by a defendant is sufficient to render those individuals 'similarly situated' for purposes of an FLSA collective action"; and (3) "Whether an FLSA collective action can be maintained as to particular issues rather than as to an FLSA claim as a whole." Def.'s § 1292(b) Mem. at 2–3.

**1.**

First, the court is not convinced that there is "substantial ground for difference of opinion" as to this question. 28 U.S.C. § 1292(b). MTM attempts to establish "substantial ground" by pointing to three out-of-circuit district court cases—two of which the court cited in its August 2021 opinion—specifically finding the question of joint-employment status insufficient to support a collective action. Def.'s § 1292(b) Mem. at 6–8 (first citing *Edmonds v. Amazon.com, Inc.*, No. C19-1613JLR, 2020 WL 5993908 (W.D. Wash. Oct. 9, 2020); then citing *Gibbs v. MLK Express Servs., LLC*, No. 18-cv-434-FtM-38MRM, 2019 WL 2635746 (M.D. Fla. June 27, 2019); and then citing *Arnold v. DirectTV, LLC*, No. 10-cv-352-JAR, 2017 WL 1251033 (E.D. Mo. Mar. 31, 2017)); *Harris*, 2021 WL 3472381, at *7.[3] MTM also emphasizes that "Plaintiffs have identified no case that has ever held that an FLSA collective action may be maintained where . . . the record shows that there is no common" violative policy. Def.'s Reply in Supp. of Def.'s Mot., ECF No. 196, at 4.

MTM is correct that other courts have held that a dispute over joint-employer status does not make plaintiffs "similarly situated" for purposes of the FLSA. Section 1292(b)'s substantial-ground analysis is not, however, an exercise in "keep[ing] score." *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 5 (D.D.C. 2018). The court is required to analyze the reasoning of the various decisions and evaluate the "strength of the arguments in opposition" in assessing whether there is substantial ground for dispute. *APCC Servs.*, 297 F. Supp. 2d at 98. For the

---

[3] MTM also cites *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012), but that opinion does not even use the term "joint employer," nor does the underlying district court opinion in that case, *see Zavala v. Wal-Mart Stores, Inc.*, No. 03-5309, 2011 WL 1337476 (D.N.J. Apr. 7, 2011). Def.'s § 1292(b) Mem. at 8. Another case cited by MTM is unpersuasive for a different reason: *Hinds v. FedEx Ground Package Sys., Inc.*, No. 18-cv-01431-JSW, 2021 WL 4926980 (N.D. Cal. Aug. 18, 2021), deals with class certification under Federal Rule of Civil Procedure 23(b)(3) and (c)(4), not collective-action certification under the FLSA.

6

reasons already explained in its August 2021 opinion, the court is skeptical of the rationale of cases like *Edmonds* and *Gibbs*, which rejected certification of a collective action on the joint-employer issue. *See Harris*, 2021 WL 3472381, at *5–7.  That approach runs counter to the expansive aims of the FLSA, which defines the term "employer" broadly to prevent employers from shielding themselves from liability by operating through intermediaries. *See Harris v. Med. Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 245 (D.D.C. 2018) (explaining that the FLSA "intentionally drew the definition of 'employer' under the FLSA to have a broad sweep" to impose liability on "businesses that used middlemen to" engage in unlawful employment practices); *see also Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing the purpose of the FLSA of giving "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and benefitting the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity").  Nor do those cases offer any explanation for why Congress would have authorized collective actions only for questions of ultimate liability (i.e., whether a policy or practices violates the FLSA), and not threshold questions of liability (i.e., whether a defendant is a joint employer).

MTM also argues that courts have certified FLSA collective actions only where a common FLSA-violating policy or practice is present, demonstrating that "the existence of . . . a common policy or practice has . . . been recognized *as a necessary prerequisite* to a collective action." Def.'s § 1292(b) Mem. at 6 (emphasis added).  But MTM makes an inferential leap that no appellate court has made.  As the court pointed out in its August 2021 opinion, these cases show at most that "a common policy or practice might be *sufficient* to show party plaintiffs are similarly situated," not that a common policy or practice is "*necessary*."  *Harris*, 2021 WL 3472381, at *6. In *Campbell*, for example, as in other similar cases, "the lack of a common FLSA-violating policy

was dispositive because it was the only justification for collective action offered by the plaintiffs." *Id.* In other words, in those cases, the absence of a common violative policy or practice meant that there was no other ground for a collective action. But MTM cites no circuit authority for the proposition that *only* a common violative policy or practice can support a collective action. Thus, MTM has not established substantial ground for dispute.

In sum, MTM's arguments do not extend beyond mere "continued disagreement with the court's decision." *Wash. Tennis & Educ. Found.*, 324 F. Supp. 3d at 145 (internal quotation marks omitted); *see also In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2000 WL 673936, at *3 (D.D.C. Jan. 27, 2000) (declining to certify for interlocutory appeal where "Petitioners rely on their disagreement with the Court's [previous] ruling as well as the acknowledged lack of precedent on this issue to demonstrate a substantial ground for difference of opinion" (internal quotation marks omitted)). The *Gibbs* and *Edmonds* courts may have concluded on their facts that a collective action could not proceed without a common violative policy or practice, but the court's assessment of the evidence and claims in this case compels a different conclusion. The court maintains its view that Plaintiffs have adequately demonstrated they are similarly situated as to the material question whether MTM is a joint employer, *see Harris*, 2021 WL 3472381, at *7, and MTM has not made a sufficient showing of substantial ground for disagreement as to that holding.

**2.**

MTM also has not demonstrated that interlocutory review will materially advance the disposition of the litigation. To satisfy that requirement, MTM must show that interlocutory appellate review "would generate significant savings in resources for both the courts and the litigant[]." *Educ. Assistance Found.*, 2014 WL 12780253, at *3 (quoting McKenzie v. Kennickell,

8

No. 73-0974, 1986 WL 32653, at *2 (D.D.C. Oct. 27, 1986)).  MTM asserts that "[i]f the Circuit Court of Appeals grants review and holds that maintaining certification of a collective action is not proper in this case, this litigation will revert to an action involving only three plaintiffs," which would in turn "dramatically impact both the scope and length of the future proceedings in this action."  Def.'s § 1292(b) Mem. at 10.  The alternative, MTM claims, is a "wide-ranging procedure" of conducting "trial individually or in small groups of plaintiffs" on remaining questions of liability and damages, which would "require at least 53 different trials if not more"— consuming "more time and resources than the three-plaintiff case that would remain in the event an interlocutory appeal resulted in decertification now." *Id.*

But MTM has not explained how, exactly, the burden on the parties and the court would change if the Circuit were to undo the certification of the collective.  As this court has previously noted, whether this case proceeds now as a collective or three-plaintiff action, MTM and Plaintiffs likely will use evidence of different TSPs' policies—already generated as part of class and collective discovery—to demonstrate that MTM is not a joint employer.  *Harris*, 2021 WL 3472381, at *5.  Plaintiffs represented in their opposition to MTM's motion to stay proceedings that they "do not intend to seek further discovery before moving for summary judgment" on the joint-employer question.  Pls.' Opp'n to Def.'s Mot. to Stay Proceedings, ECF No. 193, at 4.  MTM said otherwise.  *See* Reply in Supp. of Def.'s Mot. to Stay Proceedings During Pendency of Rule 23(f) Appeal, ECF No. 194, at 5.  The court gave MTM the opportunity to describe what discovery it hopes to take on the joint-employer issue, and how such discovery would differ if the case were to proceed as a collective or a three-plaintiff case, and its response was insubstantial:  MTM did not articulate a difference between the two.  *See* Hr'g Tr. (draft), Nov. 10, 2021.  It does not naturally follow that fewer plaintiffs will mean a narrower scope of discovery.  The court can

imagine a scenario wherein MTM wishes to take discovery from TSPs other than those that employed the three Plaintiffs to show that it was not a joint employer to *any* driver.  It is therefore not clear to the court how a decertified collective would spare the parties and the court significant resources in discovery with respect to the joint-employer question.

What's more, it is possible that decertification would not lessen the burden on the court and parties at all.  Plaintiffs have indicated that "if MTM were to prevail in an interlocutory appeal and secure decertification of the collective, the result would be individualized trials for both the three named plaintiffs *and* for up to the more than one-hundred fifty party plaintiffs in the FLSA collective action."  Pls.' Opp'n to Def.'s Mot. to Amend and Certify Order of Aug. 6, 2021 for Interlocutory Appeal Pursuant to 28 U.S.C. Section 1292(b), ECF No. 195 [hereinafter Pls.' § 1292(b) Opp'n], at 8.  If that were to occur, the court likely would consolidate the cases for proceedings on the joint-employer question, leaving the court (and the parties) in no different position, practically speaking, than if the case were to proceed collectively now.  *See* Fed. R. Civ. P. 42.  Either way, whether as a collective action or as a consolidation of individual actions, the joint-employer question likely will not be tested and resolved only for a small subset of drivers.  Certification for interlocutory review therefore would not "hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense."  *Molock*, 317 F. Supp. 3d at 6; *see also United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (denying certification for interlocutory review where "regardless of the outcome of interlocutory appeal, trial of the case would still have to occur to reach the litigation's 'ultimate termination'").

### III.

Defendants also have moved to stay trial-court proceedings pending the outcome of the Rule 23(f) motion before the D.C. Circuit.  An appeal under Rule 23(f) "does not stay proceedings in the district court unless the district judge or the court of appeals so orders."  Fed. R. Civ. P. 23(f).  Such an order is thus not automatic but discretionary and "requires a demonstration that the probability of error in the class certification decision is high enough that the costs of pressing ahead in the district court exceed the costs of waiting."  *DL v. District of Columbia*, 6 F. Supp. 3d 133, 135 (D.D.C. 2014) (internal quotation marks omitted).[4]

Under the circumstances, the court is not persuaded that a stay is required in the short term. By taking three months to consider the motions before the court, the court already effectively stayed discovery for that period.  Additionally, MTM is free to come back to the court to seek a stay if the D.C. Circuit decides to grant the Rule 23(f) motion.  A stay until such decision is made is not warranted.

This case has been pending since 2017 and has reached only the certification stage.  It will continue to move forward unless the D.C. Circuit signals otherwise.

### IV.

For the foregoing reasons, MTM's Motion to Amend and Certify, ECF No. 189, and Motion to Stay Proceedings During Pendency of Rule 23(f) Appeal, ECF No. 190, are denied.  The parties shall (1) file a Joint Status Report by December 6, 2021, that proposes a schedule for further

---

[4] Both parties frame their arguments in terms of the four factors used in this District to consider motions for preliminary injunctive relief.  *See In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 3 (D.D.C. 2002).  However, as the parties acknowledge, the D.C. Circuit has not articulated a standard for determining whether a stay is appropriate pending a Rule 23(f) appeal, *see DL*, 6 F. Supp. 3d at 135, and so the court need not evaluate the four-factor *In re Lorazepam* analysis as it applies to this case.

proceedings and (2) appear for a status conference on December 10, 2021, at 3:00 p.m. via videoconference to discuss the proposed schedule.

Dated:  November 22, 2021

Amit P. Mehta
United States District Court Judge