UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ISAAC HARRIS, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil No. 17-cv-01371 (APM) |
| MEDICAL TRANSPORTATION MANAGEMENT, INC. | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

In July 2017, Plaintiffs Isaac Harris, Darnell Frye, and Leo Franklin filed this case as a putative class action and Fair Labor Standards Act ("FLSA") collective action against Defendant Medical Transportation Management, Inc. ("MTM"). MTM contracts with the District of Columbia to provide District-based Medicaid recipients with non-emergency transportation to medical appointments. MTM does not itself provide these services but subcontracts them to transportation service providers ("TSPs").

Plaintiffs are drivers employed by TSPs. They allege that they routinely were not paid full wages for the time that they worked. Though MTM is not their direct employer, Plaintiffs assert that the company is liable for those unpaid wages. They contend that, under both the FLSA and District of Columbia wage laws, MTM is liable because it is a joint employer with their individual TSPs. They also claim that MTM is strictly liable under District of Columbia wage laws because

it is the general contractor to the subcontractor TSPs.  For its part, MTM denies that it is either a joint employer or a general contractor and thus disclaims responsibility for any unpaid wages.

To resolve these threshold liability questions for purposes of the D.C. wage claims,[1] the court certified two "issue" classes under Federal Rule of Civil Procedure 23(c)(4).  *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-cv-1371, 2021 WL 3472381 (D.D.C. Aug. 6, 2021) ("*Harris IV*").  The first issue was "[w]hether MTM qualifies as a joint employer of the putative class members," and the second was "[w]hether MTM is a general contractor that is strictly liable for any violations of the wage laws committed by its subcontractors."  *Id.* at *9–11.

MTM filed an interlocutory appeal challenging the issue class certification.  The D.C. Circuit agreed with MTM that the court's Rule 23 analysis had fallen short.  *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746 (D.C. Cir. 2023).  The D.C. Circuit held that the issue classes satisfied the numerosity and commonality requirements of Rule 23(a)(1) and (a)(2), respectively.  *Id.* at 759.  It also found that "the Drivers' claims and defenses are typical of the class and that they and their counsel will fairly and adequately represent the class[,]" thus satisfying Rules 23(a)(3) and (a)(4).  *Id.* at 759–60.  Where this court went astray, the D.C. Circuit said, was that it had "failed to find that within the issues for the certified class . . . common questions of law or fact predominate over individual questions," as required by Rule 23(b)(3).  *Id.* at 760.  This court "also failed to find that the use of an issue class to address those questions would be a superior litigation device to other available tools for resolving the common questions."  *Id.*  "Without those predicate determinations," the Circuit held, "the district court erred in certifying an issue class under Rule 23(c)(4)."  *Id.*  It added that this court "had to determine how notice could effectively be given in the case" and did not show "how notice would be administrable for this class."  *Id.*

---

[1] The court conditionally certified a collective action to resolve the joint employer issue for purposes of the FLSA claim.  *Harris v. Med. Transp. Mgmt.*, Inc., 317 F. Supp. 3d 421, 425 (D.D.C. 2018).

The Circuit remanded the matter to this court to evaluate the Rule 23 elements it had not considered. *Id.*

This Memorandum Opinion addresses the certification deficiencies identified by the Court of Appeals. For the reasons that follow, the court finds that Rule 23(b)(3)'s predominance and superiority elements are met, and that Rule 23(c)(2)'s notice requirements can be satisfied. The court thus reaffirms its certification of the issue class.

## II.

### A.   Predominance

The court starts with the predominance requirement. Rule 23(b)(3) states that "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, at 195–96 (5th ed. 2012)). The court must not only "ensure that the common questions within the certified issues predominate over any individual ones," it "must also evaluate the relationship any certified issues have as to the dispute as a whole." *Harris*, 77 F.4th at 760. "A certified issue class should encompass a reasonably and workably segregable aspect of the litigation," *id.*, which "protects all parties' interests in the full presentation of their claims and evidence," *id.* at 762.

#### 1.   Common Questions

"Evidence is considered 'common' to the class if the same evidence can be used to prove an element of the cause of action for each member." *Kottaras v. Whole Foods Market, Inc.*, 281

F.R.D. 16, 22 (D.D.C. 2012).  On the other hand, evidence is individualized when "members of the proposed class would need to present evidence that varies from person to person."  *Id.*

Plaintiffs contend that common evidence will establish that MTM is both a joint employer and general contractor.  *See* Pls.' Mem. in Support of Maintaining Class Certification Following Remand, ECF No. 233, at 4.  As proof, Plaintiffs primarily will rely on MTM's written agreements with the TSPs and the uniform terms that apply to all TSPs.  *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-cv-01371 (APM), 2020 WL 5702085, at *9 (D.D.C. Sept. 24, 2020) ("*Harris III*") ("Plaintiffs no doubt will look to MTM's policy documents and service agreements with subcontractors, as well as testimony by MTM employees regarding its hiring and training practices and the rules and standards MTM requires drivers to follow.").  The level of control these terms vest in MTM—individually and collectively—rests at the heart of the joint employer and general contractor issues.  *Cf. Browning-Ferris Indus. of Cal., Inc. v. NLRB*, 911 F.3d 1195, 1209–14 (D.C. Cir. 2018) (discussing the right-to-control element of the NLRB's joint-employer standard, which is rooted in common law); *see also Harris v. Med. Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 240–44 (D.D.C. 2018) ("*Harris I*") (holding that the joint employment determination is a highly fact-intensive inquiry and citing various Circuit's tests that evaluate control).[2]

---

[2] MTM contends that the uniform policies upon which Plaintiffs rely are not relevant to the joint employer inquiry because they relate to "quality control measures" and thus cannot constitute common evidence.  Def.'s Opening Submission Regarding D.C. Circuit's Opinion, ECF No. 234 [hereinafter Def.'s Opening Submission], at 7–8.  At the motion-to-dismiss stage, MTM similarly described the polices as "quality control measures," and the court disagreed with that characterization.  *See Harris I*, 300 F. Supp. 3d at 244.  In its brief on remand, MTM does little to develop the argument.  It cites to *Browning-Ferris* but does not explain how the case supports its position.  That would have been helpful, as the term "quality control" does not even appear in *Browning-Ferris*.  As MTM has not adequately developed its "quality control" argument, the court does not consider it.

In prior filings, Plaintiffs have pointed to various common aspects of the TSP contracts as evidence of MTM's control over the drivers' work. They include:

- Basic eligibility and credentialing requirements for hiring new drivers, Pls.' Partial Mot. for Summ. J., Stmt. of Undisputed Material Facts, ECF No. 222 [hereinafter Pls.' Stmt.], at 2–3;[3]

- Mandatory training and retraining programs for drivers, including "general safety measures; ethics and professionalism; customer service; sexual harassment; assisting passengers with disabilities; cultural competency; and alcohol and drug abuse," and fraud, waste, and abuse, *id.* at 4–5;

- The firing and disciplining of drivers, *id.* at 6–7;

- Policies governing a driver's day-to-day appearance and conduct, including standards of dress, personal grooming, wearing of uniforms, and display of identification, *id.* at 7–8;

- Policies on client care, including securing of seatbelts and mobility devices and refraining from certain conduct, *id.* at 8–9;

- Monitoring of drivers' on-the-job performance, *id.* at 9–10;

- Regulation of vehicle specifications, *id.* at 10–13; and,

- A company-wide system of reporting complaints and accidents, *id.* at 13.

This evidence is common to all putative class members, and MTM does not genuinely contend otherwise. *See* Def.'s Opening Submission at 7–8.

---

[3] According to Plaintiffs, MTM requires all drivers to "satisfy 14 credentialing prerequisites before they may provide service to MTM's clients. Those prerequisites are: CPR certification; defensive driving training; driver's license(s); driving record; DDS training; first aid training; FBI background check; drug screen (annual and random); National Sex Offender search; fraud, waste and abuse training; HIPAA training; OIG check; Social Security card; and System for Award Management (SAM) (MTM internal check)." Pls.' Stmt. at 3–4.

MTM has claimed in a related filing that it does not set these requirements, but rather they are specifications imposed by the District of Columbia that MTM must implement through each TSP contract. Def.'s Stmt. of Disputed Material Facts Pursuant to Local Rule 7(h), ECF No. 225-1 [hereinafter Def.'s Stmt.], at 3–14. Because that argument applies equally to MTM's contracts with the TSPs, that question is common to all class members.

So, too, is another aspect of MTM's defense. MTM disputes that it has the power to fire or discipline drivers; instead, it says, that power rests with the District of Columbia and individual TSPs. The evidence that MTM cites to support that position—witness testimony—is common proof, equally applicable to all drivers. Def's Stmt. at 6–7 (citing Ex. 3, Depo. of Michelle Moses, ECF No. 225-4); *see also* Pls.' Stmt. at 6–7.

On remand, MTM's primary contention is that the predominance element is not met because the certified issues "involve a multitude of inherently individualized inquiries." Def.'s Opening Submission at 7. According to MTM, these inquiries include disparate practices such as how drivers were paid and provided work schedules. *Id.* at 8. MTM is correct: there are different employment practices for payment and scheduling among TSPs. But those differences do not mean that individualized proof will predominate over common evidence within the issue class. To the contrary, individualized proof will be used by MTM as *common* evidence in arguing that it is neither a joint employer nor general contractor.

The reason for that seeming paradox is that MTM does not claim that it is a joint employer or general contractor for some drivers but not others. Its contention is that it is not a joint employer or general contractor as to *any* of them. So, MTM likely will cite differences among drivers to show it is not liable for unpaid wages for any class member. For example, the evidence shows that pay structures and pay rates differed across TSPs. *See Harris III*, 2020 WL 5702085, at *9. Such

differences bolster MTM's claim that it lacks control over the drivers. *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) (citing as a factor under the "economic reality" test the authority to determine the rate and method of pay). So, too, would evidence showing that there are differences in how TSPs set drivers' schedules. Such disparate practices would weigh against holding MTM liable. *See id.* (citing the ability to control employees' work schedules as another factor).

MTM would have a stronger argument if its contention were, for instance, that the joint employer issue turned on facts particular to each driver, such that the issue could be resolved only on a driver-by-driver basis. But that is not what it claims. In MTM's view, variation among drivers will not change whether it is a joint employer or general contractor. Those differences instead establish that MTM is not liable for unpaid wages. Thus, the fact of disparities among TSPs is itself common proof.

Relatedly, MTM contends that the issue class lacks class cohesion, relying on the Supreme Court's decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Def.'s Opening Submission at 4; *see Harris*, 77 F.4th at 762 (stating that the "predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant' class litigation of their substantive claims, rather than bringing individual suits") (quoting *Amchem*, 521 U.S. at 623). In *Amchem,* the Court found that a proposed settlement class was not sufficiently cohesive to warrant "adjudication by representation" because, although all of its members were exposed to asbestos, each plaintiff had differing degrees of exposure, which resulted in a wide range of medical consequences. 521 U.S. at 623–24. For example, exposure-only plaintiffs—that is, plaintiffs exposed to asbestos but who had not yet contracted an asbestos-related disease—shared little in common with plaintiffs who were suffering from lung cancer or other diseases. *Id.* at 624.

No similar disparities are present in this case. Admittedly, there are differences among the drivers, such as pay structure, compensation, and hours worked. *See Harris III*, 2020 WL 5702085, at *9. But those differences will not require the court to perform an individualized inquiry to resolve the certified questions for each driver. The issue class therefore has the requisite cohesion. *See Amchem Prods., Inc.*, 521 U.S. at 623.

### 2. Relationship of Certified Issues to the Whole Class

The predominance element also requires assessing the relationship of the certified issues to the class as a whole. *See Harris*, 77 F.4th at 760. This component is likewise satisfied. Whether MTM is a joint employer or a general contractor are discrete but critical issues. As the D.C. Circuit observed, "determining whether MTM crosses the threshold of liability is 'central to' and potentially dispositive of 'the validity' of the Drivers' claims." *Id.* at 759 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Given the common evidence that will predominate as to those questions, resolving them will advance the dispute as a whole.

MTM contends the certified issues run afoul of the Circuit's admonishment that "[a]n issue class cannot consist of a single common question that predominates as to itself." Def.'s Opening Submission at 3 (citing *Harris*, 77 F.4th at 762). But that assertion is misplaced. The D.C. Circuit's concern in having "predominance become a tautological inquiry" was that "the district court must explain how, within the context of the particular litigation before it, common questions predominate within a reasonably and workably segregable component of the litigation." *Harris*, 77 F.4th at 762. Here, the certified issues do predominate within a distinct and manageable aspect of the overall litigation: they answer whether MTM can be legally liable for any underpayment of wages. Ruling in favor of MTM on that issue would end the case. Thus, the issues the court has certified satisfy the predominance element not by "tautological inquiry," but

8

instead through a showing that the resolution of these issues depends largely on common proof, not individualized inquiries, and would meaningfully advance the litigation. *See Harris*, 77 F.4th at 761–62 (citing *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, (3d Cir. 2021) (stating that "district courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability")).

### 3. *Protection of all Parties*

Finally, to satisfy the predominance element, the issue class must "protect[] all parties' in the full presentation of their claims and evidence." *Harris*, 77 F.4th at 762. In this case, litigation over threshold liability issues will not disadvantage any party. By requesting issue class certification, Plaintiffs have accepted that, if MTM were to prevail, all drivers (other than opt outs) would be bound by that determination. MTM has not identified how litigating the threshold liability questions as a class would prevent it from fully presenting its defenses on those questions or impair it within the larger litigation. A class-wide resolution has the potential to benefit MTM as much as it does the drivers.

In summary, the issue class meets the predominance requirement of Rule 23(b)(3).

### B. Superiority

The court next addresses the superiority element of Rule 23(b)(3). "The superiority requirement ensures that class adjudication makes the litigation more manageable and promotes the prompt and efficient resolution of the case." *Harris*, 77 F.4th at 763. As part of the inquiry, the court must assess the relative advantages of alternative procedures for handling the controversy. *Id.* at 762.

### 1. *Judicial Economy*

The certified issue class promotes judicial economy, as well as resource- and efficiency-saving benefits to the parties. *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). No driver, individually or collectively, can hold MTM liable under the relevant wage laws without showing that MTM is either a joint employer or a general contractor. Addressing those questions through issue classes is unquestionably preferable to ruling on a case-by-case basis. An individualized approach would involve duplicative litigation in which near identical evidence would be presented by both sides. *See supra* Section II.A (discussing the common evidence used by both parties). Drivers in separate cases would point to the same terms of MTM's TSP contracts to demonstrate the "economic reality" of the employment arrangement. And, even in an individual case, MTM likely would point to differences across TSPs to show that it does not control the "typical employer prerogatives [that] govern the relationship between the putative employer and employee." *Morrison*, 253 F.3d at 10–11. Litigating joint employer and general contractor questions in "one stroke" is superior to doing so in dozens of separate suits. *Dukes*, 564 U.S. at 350.

In response, MTM contends that there is no indication that "hundreds" of individuals will emerge to file suit, if the court were not to proceed with an issue class. Def.'s Reply Br. Regarding District of Columbia Circuit's Opinion, ECF No. 236 [hereinafter Def.'s Reply Br.], at 3. But 155 current and former drivers have joined the collective action, a strong signal that at least dozens of drivers would file individual suits in the absence of a class. *See Harris IV*, 2021 WL 3472381, at *1.

### 2. *No Superior Alternative*

In urging the court to find the superiority element not satisfied, MTM also references the D.C. Circuit's proposal that Plaintiffs' pending motion for partial summary judgment might be "an

10

alternative to class litigation" in resolving the certified questions. Def.'s Opening Submission at 9 (citing *Harris*, 77 F.4th at 763). MTM does not actually explain how resolving the partial motion for summary judgment is the "more manageable" and "prompt and efficient" way to resolve those issues. *See id.* The reason for MTM's silence may be that, in the present posture of this case, the summary judgment route is *not* superior to class litigation. To understand why, it is helpful to consider the case that prompted the D.C. Circuit's suggestion, *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984).

In *Wright*, the plaintiffs brought a class action alleging violations of federal and state securities laws and common law fraud against, among others, banks and title companies. *Id.* at 542. The district court ultimately granted summary judgment in favor of those defendants before ruling on the plaintiffs' motion for class certification. *Id.* at 543. On appeal, the plaintiffs contested "whether it was proper for the district court to order summary judgment on the liability question without first ruling on class certification." *Id.* The Ninth Circuit held that it was. *Id.* at 544. The court noted that the district court had "held extensive discussions with the parties to determine the most fair and economical way to structure [the] litigation," and had determined that "the threshold issues relating to the banks and title companies might be resolved on motions for summary judgment after quite limited discovery." *Id.* "This approach, to which the defendants consented, held the promise of saving all of the parties considerable time and expense." *Id.* Under those circumstances, the Ninth Circuit held, "we cannot say that the course chosen by the district court manifested an abuse of discretion. It is reasonable to consider a Rule 56 motion first when early resolution of a motion summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." *Id.*

The court in *Wright* further noted that "[t]his might be a different case if the defendants had not consented to the chosen procedure," because the judgment in their favor only ran against the named defendants and not absent class members. *Id.* "Where the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class,[4] it is within the discretion of the district court to rule on the summary judgment motion first." *Id.* The court also observed that neither the named plaintiffs nor the putative class members had shown any prejudice from the district court's approach. *Id.*

This case differs from *Wright* in multiple ways that make class litigation the superior mode of resolution here. Unlike *Wright*, this case from the outset has proceeded from the premise that class certification would be resolved before rendering any judgment on the merits. After the court denied MTM's motion to dismiss, the parties jointly asked to commence class discovery and enter a schedule for class certification, to which the court agreed. Jt. Rule 26(f) Plan, ECF No. 28, at 4–5; Order, ECF No. 29. Then, after the court denied class certification for the D.C. wage claims but left open the possibility of an issue class, *Harris III*, 2020 WL 5702085, at *12–13, MTM argued against certification because the proposed issue class would not fully resolve the question of liability, *see Harris IV*, 2021 WL 3472381, at *10. After the court rejected that argument, MTM said it would need more discovery to respond to Plaintiff's anticipated motion for partial summary judgment on the certified issues. *See* Def.'s Reply in Supp. of Def.'s Mot. to Stay Proceedings During Pendency of Rule 23(f) Appeal, ECF No. 194, at 5. Only on remand, and even then only in its responsive brief, did MTM accede to proceeding first with the partial motion. Def.'s Reply Br. at 3.

---

[4] The court takes "members of the putative class" to refer only to the named plaintiffs. That must be what the *Wright* court meant based on its earlier observation that "[t]he judgment will not be res judicata as to other individual plaintiffs or other members of any class that may be certified." 742 F.2d at 544.

At no point did the parties or the court ever raise the possibility of a short period of limited discovery followed by a partial motion for summary judgment on the threshold liability issues. Thus, whatever efficiencies such an approach might have produced have long since passed. It would be highly prejudicial to tell Plaintiffs, after years of class-focused litigation, that a class-wide resolution is no longer appropriate because an alternative resolution, which neither the parties nor the court ever proposed, and which became fully briefed *after* the court certified the issue class, is the preferred course. Such an approach to assessing the superiority element would undermine its very purpose—to "ensure[] that class adjudication makes the litigation more manageable and promotes the prompt and efficient resolution of the case." *Harris*, 77 F.4th at 763.

*Wright* differs in another critical way: it did not involve an overlapping collective action under the FLSA. Earlier in this case, the court determined that because the drivers were "similarly situated," and because the question of joint employment is also a threshold liability issue under the FLSA, the collective action should proceed on that question. *Harris IV*, 2021 WL 3472381, at *6–7. The D.C. Circuit did not disturb that ruling on appeal. *Harris*, 77 F.4th at 765–77. Thus, there already is a class-type dimension to this case. In such circumstances, proceeding with partial summary judgment in lieu of an issue class could produce a confusing result. If the court were to grant partial summary judgment in Plaintiffs' favor on the joint employer question, it would not directly resolve the question for all drivers as to all claims. Such a ruling would benefit the named plaintiffs and those drivers who have opted into the collective action but only as to their FLSA claims. The ruling would not apply to the opt-in drivers' D.C. wage claims and, of course, it would not reach absent class members at all. Inviting such a patchwork result on the same legal question makes little sense.

This patchwork result might be avoided if MTM were to acknowledge, as the defendants seemingly did in *Wright*, that an adverse ruling would bind it as to all drivers. "Under the doctrine of offensive collateral estoppel or issue preclusion, a defendant is precluded from relitigating identical issues that the defendant litigated and lost against another plaintiff." *Jack Faucett Assocs., Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984). But MTM has never conceded that offensive collateral estoppel would apply. It has only said that "any absent putative class members who may later bring a claim *can argue* for the use of collateral estoppel in their own future proceedings." Def.'s Reply Br. at 3 (emphasis added). Thus, proceeding by partial summary judgment could lead to further offensive collateral estoppel litigation in individual actions. Class-wide litigation would eliminate that potentially time-consuming and burdensome issue.

Finally, unlike the defendants in *Wright*, MTM only opposed the partial motion for summary judgment. It did not cross-move for judgment on those issues. Def.'s Mem. of P. & A. in Opp'n to Pls.' Mot. for Partial Summ. J., ECF No. 225. If MTM were to prevail on Plaintiffs' motion due to disputed issues of fact, litigation on the issue could continue to a trial. Better to resolve such facts in a single proceeding, than to invite serial contests in individual cases.

Accordingly, the court finds that, given the history and present posture of this case, proceeding with an issue class is the superior method to resolving the joint employer and general contractor questions.

### C. *Martinez v. FedEx Ground Package System, Inc.*

After the parties' remand briefing concluded, a court in the District of New Mexico decided a case that bears some resemblance to this one. In *Martinez v. FedEx Ground Package System, Inc.*, the court declined to certify an issue class to determine whether the defendant was a joint employer of drivers employed by various independent service providers ("ISPs"), who had

14

contracted with the defendant to deliver packages. Civ. No. 20-1052 SCY/LF, 2023 WL 7114678 (D.N.M. Oct. 27, 2023). As here, the plaintiffs in *Martinez* claimed that the defendant was a joint employer responsible for unpaid wages under state law. *Id.* at *1. Citing the parallels between this case and *Martinez*, MTM urges the court to follow that court's decision. Def.'s Notice of Suppl. Authority, ECF No. 237.

But this case differs from *Martinez* in important respects. There, the court decided that the element of predominance was not satisfied because "Defendant convincingly argue[d] that extensive individualized evidence would be needed to resolve the issue of whether *Defendant* controlled the ISPs' hiring, firing, and disciplining." 2023 WL 7114678, at *20. As an example, the court pointed to the fact that one of the plaintiffs continued to work for an ISP even though he was disqualified under the company's driver disqualification program. *Id.* From that fact, the court reasoned that "the extent to which Defendant controlled the termination or suspension of a driver appears to be fact dependent, not dependent on a uniform provision in Defendant's contracts with ISPs" and "[t]he need for such individualized presentation would make proceeding as a class less efficient than proceeding through individual lawsuits." *Id.* Moreover, the court believed that a second consideration—the fact that some ISPs did not exclusively work for the defendant— further merited individualized inquiries because differences in the degree of economic independence (or dependence) among the ISPs meant that the joint employer issue could not be "productively litigated in one stroke for the entire class." *Id.* at *21.

Here, in sharp contrast, MTM has not identified any factor as to which the presentation of individualized evidence would render class litigation inefficient or prejudice its ability to present a defense. As discussed, MTM has identified factors that differ across TSPs, such as wage rates, payment structures, and the setting of work schedules. Def.'s Opening Submission at 8. But those

15

differences, once again, are *common* evidence that support MTM's position that it is not a joint employer. There is simply no reason why MTM could not, for example, present a summary witness to highlight the variations among TSPs across key metrics. And there is no reason to think that such evidence would get lost among the common policies and practices that Plaintiff will emphasize. Even the *Martinez* court recognized that "by providing reasons that universally apply to all ISPs to argue it is not a joint employer, Defendant feeds into Plaintiffs' argument that the Court can decide the joint-employment issue as a class, without the need to get into individualized evidence." 2023 WL 7114678, at *20. Thus, the mere fact that questions within the issue class will require individualized proof does not defeat the efficiencies that will be gained by class-wide resolution. *See Harris*, 77 F.4th at 760. That is particularly true here given that MTM does not contend it may be a joint employer as to some drivers but not others.

The court in *Martinez* also found that class-wide litigation was not the superior method to resolve the controversy fairly and efficiently. 2023 WL 7114678, at *21–22. The court agreed that the joint employer question was a "significant issue," but concluded that resolving it "on a classwide basis would also significantly delay resolution of this litigation." *Id.* at *22. "For this issue to be resolved on a classwide basis, the parties must conduct discovery to ascertain the putative class, provide notice and an opt-out mechanism to the putative class, and litigate the joint-employment issue, to include proceeding to trial on this one issue if there are disputed facts." *Id.* But once that issue is resolved, the court observed, "numerous legal and factual issues will remain to be resolved on an individual basis," such as individual employees' pay rates and hours worked. *Id.* The court concluded that "[r]ather than delaying resolution of the legal and factual issues not addressed through issue certification until the issue certification process plays out and the certified

issue is resolved, resolution of the joint-employment issue can be subsumed in the individual litigation that will already present an array of other legal and factual issues." *Id.*

The posture of this case requires a different conclusion. "[D]iscovery to ascertain the putative class[,]" *id.*, is already done. So, too, is discovery on the merits of the certified issues, and the parties have fully briefed a partial summary judgment motion on those questions. As in *Martinez*, the court still will need to issue notice and provide an opt-out mechanism. But given all that has transpired in this case, declining to move forward with an issue class would be a large step backwards.

Thus, the *Martinez* court's reasons for believing that an issue class was not a superior method of adjudicating the controversy do not apply here. Resolving the joint employer and general contractor questions as an issue class, particularly when there remains a FLSA collective action involving an identical question, is the superior method for advancing this litigation.

**D.     Notice**

The D.C. Circuit instructed that, "if the district court certifies the issue class under Rule 23(b)(3) on remand, it must direct 'the best notice that is practicable' as part of any certification order." *Harris*, 77 F.4th at 764 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Providing notice is readily administrable for the issue class. The court already approved a notice process for the FLSA collective action that it could replicate for the issue class. *See Harris v. Med. Transp. Mgmt., Inc.*, 317 F. Supp. 3d 421, 426–27 (D.D.C. 2018). MTM has not contested that this process could be effectively and efficiently readministered. *See* Def.'s Opening Submission at 10 (arguing only that "[a]s no issue class can be found on this record, no notice should be issued").

## III.

For the reasons set forth above, the court once more grants Plaintiffs' motion for certification of an issue class under Rule 23(c)(4), ECF No. 179, to determine whether MTM is a joint employer or a general contractor. Additionally, Plaintiffs' Motion to Amend the Certification Order and Direct Notice to the Class, ECF No. 228, is granted. The parties shall meet and confer and submit a proposed notice on or before January 25, 2024. The parties shall appear for a remote status conference on January 26, 2024, at 9:30 a.m.

Dated: January 19, 2024

Amit P. Mehta  
United States District Judge